MARLYN J. MUSIL, APPELLEE AND CROSS-APPELLANT, V. J.A. BALDWIN MANUFACTURING COMPANY, APPELLANT AND CROSS-APPELLEE.

448 N.W.2d 591

Filed December 1, 1989.   No. 89-155.

David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

William J. Ross, of Ross, Schroeder & Brauer, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, Marlyn J. Musil, was injured on October 29, 1984, in an accident arising out of and in the course of her employment as a heavy duty welder by the defendant, J.A. Baldwin Manufacturing Company. The plaintiff claims the accident resulted in injury to her left shoulder, neck, and arm. Her average weekly wage at the time of the accident was $288. The plaintiff continued working after the accident until March 24, 1986.

The defendant paid compensation to the plaintiff for temporary total disability from March 29, 1986, through February 29, 1988. This action was commenced on March 30, 1988, to recover additional compensation under the Nebraska Workers' Compensation Act.

After the hearing before a single judge, the plaintiff

recovered an award for temporary total disability from March 1, 1985, through June 13, 1988, and for a 35-percent permanent loss of earning power thereafter, together with medical expenses; a penalty for waiting time from February 19, 1988, to June 13, 1988; attorney fees and interest; and the right to request vocational rehabilitation.

On rehearing, the plaintiff recovered an award for total disability from March 24, 1986, to the date of the rehearing and thereafter until her total disability ceases. The compensation court further found that the plaintiff presently had suffered a total loss of earning power; that the plaintiff was not physically capable of participating in a plan of vocational rehabilitation; that there was no reasonable controversy; and that the plaintiff should recover $5.76 per week as additional compensation from February 29, 1988, and attorney fees, deposition expenses, and medical expenses. From that award, the defendant has appealed.

The defendant contends that the compensation court erred in awarding compensation for temporary total disability and attorney fees and costs on the rehearing.

The plaintiff has cross-appealed, contending that the compensation court incorrectly computed the penalty due the plaintiff.

The principal controversy in this case is whether the plaintiff is entitled to recover compensation for temporary total disability after March 24, 1986. The defendant contends that the undisputed evidence shows that the plaintiff has reached maximum medical improvement and, therefore, cannot be temporarily totally disabled.

In *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989), we held that when a worker has reached maximum recovery, the remaining disability is permanent and such a worker is no longer entitled to compensation for temporary disability. If the plaintiff in this case has reached maximum recovery from the October 29, 1984, accident, she is no longer entitled to compensation for temporary total disability, but is entitled to compensation for whatever permanent disability she has.

The plaintiff has received a variety of treatments for the

injury she sustained, including surgery on at least two occasions, medication, and physical therapy. The medical evidence shows that although the plaintiff has good motion in her shoulder, she has little use of her left arm because of pain. She is unable to lift any weight of consequence and cannot perform repetitive motions with the arm.

On January 30, 1988, Dr. Robert T. Urban reported that the plaintiff had "very little use of the left upper extremity"; had constant pain with motion and at rest; was barely able to use her arm in self-care; could lift only 2 to 5 pounds, but not in a repetitive fashion; and could do no overhead work. Dr. Urban estimated her disability to be 22 percent to the body as a whole.

In his February 25, 1988, report, Dr. Urban described the plaintiff's condition as "chronic pain syndrome in the upper extremity."

In her report on June 13, 1988, Dr. Jan C. Weber stated that the plaintiff's diagnosis was "musculoskeletal neck pain and fibromyositis. It appears to be a chronic condition that will remain the same. It is unlikely that anything can be done to alleviate her pain in the hand and left shoulder as she has been through rehabilitation." On August 25, 1988, Dr. Weber reported, "Maximum healing was achieved in June 1988 after she had no further benefit from physical therapy. It appears to me that she has not changed much since Dr. Urban gave her a 20% whole body disability rating. I would give her a rating somewhat lower than this at 15%."

Dr. Gary L. Chingren reported on September 8, 1988, that "I would feel she has a not greater than 10 percent permanent physical impairment and loss of physical function to the whole arm from her shoulder injury." On September 21, 1988, Dr. Chingren reported that the plaintiff's "10 percent impairment of the upper extremity is extrapolated to a 6 percent whole person physical impairment."

The medical evidence may be summarized by stating that there is considerable evidence that the plaintiff has reached her maximum recovery and that there is no substantial evidence that further treatment will result in an improvement in her condition. There is no substantial evidence to support a finding that her disability continues to be temporary in nature. The

cause must, therefore, be remanded to the compensation court for a determination as to the nature and extent of the plaintiff's permanent disability and an award of the compensation to which she is entitled.

With regard to the defendant's second assignment of error, the evidence supports the finding of the compensation court that there is no reasonable controversy as to the plaintiff's being disabled and that she is entitled to attorney fees, interest, and the 50-percent penalty for waiting time for payments of compensation which are due but unpaid.

As we stated in *Roesler v. Farmland Foods,* 232 Neb. 842, 442 N.W.2d 398 (1989), "As is well known, where there is no reasonable controversy regarding an employee's entitlement to workers' compensation, Neb. Rev. Stat. § 48-125 (Reissue 1988) authorizes award to the employee of an attorney fee and a 50-percent payment for waiting time on delinquent payments." And, as contended by the plaintiff in her cross-appeal, the worker is entitled to recover interest on the payments which have accrued at the time payment is made by the employer. § 48-125(2).

Although there is a controversy in regard to the nature and extent of the plaintiff's permanent disability, there is no evidence to support a contention that the plaintiff has no permanent disability. To avoid the payments assessable under § 48-125, an employer need not prevail in opposition to an employee's claim for compensation, but must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation. *Mendoza v. Omaha Meat Processors,* 225 Neb. 771, 408 N.W.2d 280 (1987).

In 3 A. Larson, The Law of Workmen's Compensation § 83.41(c) at 15-1433 to 15-1435 (1989), the author states:

> If bona fide settlement negotiations accompany the nonpayment of compensation, this may purge the delay or refusal of unreasonableness, but the fact that some settlement offer has been made is not necessarily a defense. A question that has arisen in several jurisdictions is whether a penalty should apply when the employer admits liability for a lesser amount than that claimed, but pays nothing. *It is usually held that the employer should*

*have paid at least the amount for which liability was undisputed, and that a penalty is therefore warranted.*
(Emphasis supplied.)

In *Holton v. F.H. Stoltze Land Lbr. Co.*, 195 Mont. 263, 637 P.2d 10 (1981), the court held that although the total amount of compensation may be in dispute, the employer's insurer has a duty to promptly pay any undisputed compensation, and that the only legitimate excuse for delay of compensation is the existence of genuine doubt from a medical or legal standpoint that any liability exists. See, also, *Berry v. Workmen's Comp. App. Bd.*, 276 Cal. App. 2d 381, 81 Cal. Rptr. 65 (1969); *Lethermon v. American Insurance Company*, 129 So. 2d 507 (La. App. 1961); *Dufrene v. St. Charles Parish Police Jury*, 371 So. 2d 378 (La. App. 1979); *Bradley v. Mercer*, 563 P.2d 880 (Alaska 1977).

In this case, the defendant's insurance carrier wrote to the plaintiff on March 1, 1988, offering a lump-sum settlement based on Dr. Urban's estimate of 22 percent disability to the body as a whole. The offer, however, failed to take into account that compensation for permanent partial disability to the body as a whole is compensated on the basis of loss of earning capacity and employability rather than functional or medical loss. Neb. Rev. Stat. § 48-121(1) and (2) (Reissue 1988). There is substantial evidence that if the plaintiff's permanent disability is to her body as a whole, as opposed to a schedule injury, her disability is in excess of 22 percent.

But instead of paying compensation to the plaintiff for some amount of permanent partial disability, the defendant has paid no compensation to the plaintiff since February 29, 1988. Under these circumstances, the plaintiff is entitled to attorney fees; the 50-percent penalty for waiting time; and interest on all payments which have accrued, until the date they are paid.

The judgment of the compensation court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.