Gerald ELLIOTT, Petitioner,

v.

EL PASO COUNTY and The Industrial
Claim Appeals Office of the State
of Colorado, Respondents.

No. 92SC718.

Supreme Court of Colorado,
En Banc.

Oct. 18, 1993.

Rehearing Denied Nov. 15, 1993.

Schur & Olive, Robert Schur, Fort Collins, Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, for petitioner.

Law Offices of Gregory B. Cairns, Gregory B. Cairns, Denver, for respondent El Paso County.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Baird, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to decide whether depreciation deducted from a self-employed claimant's gross earnings as reported on his federal income tax return should be included in the calculation of his post-injury average weekly wage for determining the amount of temporary partial disability benefits to which he is entitled. We conclude that reasonable depreciation deductions should be included in calculating those benefits. Thus, we reverse and remand with directions the unpublished opinion of the court of appeals in *Elliott v. Industrial Claim Appeals Office*, No. 92CA0347 (Colo.App. Sept. 10, 1992).

I

On March 24, 1986, Gerald Elliott ("claimant") injured his back in the course

and scope of his employment with El Paso County ("respondent"). As a result of this injury, claimant was awarded workmen's compensation benefits [1] and received temporary total disability benefits from March 25, 1986, through April 11, 1986, at the weekly rate of $171.81. Because respondent could not find a position available which claimant was capable of performing, he did not resume his employment with respondent following his injury. Rather, he began his own business as a dump truck operator and maintained this business from 1986 through 1990.

In January 1990, claimant filed a petition to reopen his workmen's compensation claim alleging fraud, mistake and worsening of condition.[2] After a hearing, the Administrative Law Judge ("ALJ") ordered claimant's case reopened based on medical evidence establishing that his condition had worsened. The ALJ determined that respondent should pay claimant temporary partial disability benefits from February 2, 1990 to the present at a rate of $174.98 per week. This amount was calculated first by taking claimant's average weekly wage earned while employed with respondent ($311.80) and subtracting from that amount claimant's post-injury earnings from his trucking business as disclosed on his 1990 federal income tax return. The ALJ determined his post-injury earnings by taking his gross profit of $7,175 and subtracting the claimed depreciation of $4,610. Thus, the ALJ concluded that claimant's post-injury annual income for 1990 was $2,565 or, $49.32 per week. The ALJ then subtracted $49.32 from his average weekly income earned while employed with respondent which resulted in a difference of $262.48. The ALJ then awarded claimant two-thirds of that amount in temporary partial disability benefits (i.e., $174.98 per week).[3]

Respondent filed a petition for review on the grounds that it was improper to consider claimant's depreciation deduction taken on his 1990 tax return in calculating his average weekly income for 1990. The ALJ, relying on *Fireplace Equipment v. Petruska*, 796 P.2d 75 (Colo.App.1990), agreed and issued a supplemental order on October 22, 1991, revising her calculation of temporary partial disability benefits. The supplemental order set claimant's post-injury average weekly wage at $137.98 based on his gross earnings of $7,175 divided by fifty-two weeks. Subtracting that amount from his $311.80 pre-injury average weekly wage and multiplying that amount by two-thirds, the ALJ concluded that claimant was entitled to $115.88 per week in benefits.

Claimant appealed the supplemental order to the Industrial Claim Appeals Panel ("ICAP") which affirmed. He then appealed the ICAP's decision to the court of appeals. The court of appeals affirmed stating: "Our court has previously ruled that depreciation is not deductible from earnings in computing a claimant's average weekly wage. *Fireplace Equipment v. Petruska.* . . . We are not persuaded by claimant's argument that *Petruska* was erroneously decided or that it is inapplicable here." Slip op. at 2.

II

Section 8–51–103, 3B C.R.S. (1986), of the workmen's compensation act provided that "[i]n case of temporary partial disability, the employee shall receive sixty-six and two-thirds percent of the impairment of his earning capacity during the continuance thereof. . . ." Earning capacity is calculat-

1. *See* Workmen's Compensation Act of Colorado, §§ 8–40–101 to –54–127, 3B C.R.S. (1986). The Act was repealed and reenacted by the General Assembly in 1990. The retitled Act, now known as the "Workers' Compensation Act of Colorado," is codified at §§ 8–40–101 to –47–209, 3B C.R.S. (1993 Supp.). Since claimant filed his claim while the pre–1990 version of the Act was in effect, all citations herein will refer to the Workmen's Compensation Act of Colorado.

2. *See* § 8–53–113, 3B C.R.S. (1986).

3. *See* § 8–51–103, 3B C.R.S. (1986).

ed, in part, by assessing the average weekly wage earned by the claimant during the period of temporary partial disability. Under section 8–47–101(4), 3B C.R.S. (1986), when the enumerated methods for calculating a claimant's average weekly wage

> will not fairly compute the average weekly wage, the division, in each particular case, may compute the average weekly wage of said employee in such other manner and by such other methods as will, in the opinion of the director based upon the facts present, fairly determine such employee's average weekly wage.

As this provision makes clear, the determination of a claimant's average weekly wage must be fair so as to compensate the claimant for actual loss of earnings. *See Romero v. U–Let–Us Skycap Services, Inc.,* 740 P.2d 1004 (Colo.App.1987).

Respondent argues that allowing for depreciation in determining a claimant's post-injury income results in a figure that "is not reflective of his actual earnings." Thus, depreciation should not be included in determining the amount of that income when calculating temporary partial disability benefits. *See Broussard v. Zim's Alignment Serv., Inc.,* 488 So.2d 395, 396 (La.App.1986) ("The sum of money not taxed by the government because of an allowance for depreciation of machinery or equipment is merely used to induce the investor to continue in his business and does not accurately reflect his profits or losses."). Consequently, respondent concludes that *Petruska* was properly decided and is controlling here. We disagree with the first contention and accordingly, reject the second.

## A

Contrary to respondent's assertion, the depreciation allowed under the federal income tax code, *see* I.R.C. §§ 167–68, does not merely represent "an accounting principle which has been accepted by Congress as a means by which individuals who are

self-employed may reduce their taxes." Nor is depreciation simply "an arbitrary factor intended to encourage the general economy within the scheme of taxation." *Petruska,* 796 P.2d at 76. Rather, the allowance for depreciation deductions is a method by which a capital expenditure for long-lived business property may be recovered over a period of time, as opposed to being recovered in a single year as a business expense. Thus,

> depreciation serves essentially the same function as the deduction for such business expenses as wages, rent, interest, and property taxes, except that the allowance is not deductible in a single year but is instead spread out over a number of years.

Boris I. Bittker & Martin J. McMahon, Jr., *Federal Income Taxation of Individuals* 12.1 at 12–3 (1988).

The expense of purchasing a dump truck is recoverable over a period of time because it is presumed that its useful life is protracted, whereas other expenses are incurred for items, such as gasoline, that are presumed to be consumed at once. *See* Michael D. Rose & John C. Chommie, *Federal Income Taxation* §§ 3.22, at 157 (3d ed. 1988) ("In theory, the purpose of the depreciation is [a] deduction to distribute in a systematic and rational manner the cost of property."). *Compare* I.R.C. §§ 167–68 *with* I.R.C. § 179. Consequently, depreciation deductions serve essentially the same function as deductions for other business expenses; the difference being the accounting method used in arriving at the appropriate figure for decreasing one's gross income. As such, "[t]he deduction simply protects taxpayers against overstating their profits." Boris I. Bittker & Martin J. McMahon, Jr., *Federal Income Taxation of Individuals* 12.1 at 12–3 (1988).

Because reasonable depreciation deductions are necessary to accurately determine the appropriate amount of income of those who are self-employed, it follows that such deductions should be taken into account

when determining the amount of a claimant's post-injury average weekly wage for purposes of awarding benefits under the workmen's compensation act. In short, the cost of earnings must be considered in measuring those earnings. This is the conclusion reached by the majority of courts which have addressed the question of whether depreciation deductions should be considered in determining the proper amount of benefits to be awarded as workers' compensation. *See, e.g., Backaus v. Murphy Motor Freight Lines,* 442 N.W.2d 326, 327 (Minn.1989) ("computation of the employee's wage must include some recognition of the return on employee's capital investment"); *D & C Express, Inc. v. Sperry,* 450 N.W.2d 842 (Iowa 1990) (holding depreciation to be one factor used in determination of taxable income for purposes of calculating average weekly wage from self-employment); *Florida Timber Products v. Williams,* 459 So.2d 422, 423 (Fla.App. 1 Dist.1984) (reasonable depreciation attributable to claimant's equipment was a proper business expense to be deducted from claimant's gross receipts in determining his average weekly wage); *Baldwin v. Piedmont Woodyards,* 58 N.C.App. 602, 293 S.E.2d 814, 815–16 (1982) (though depreciation allowed by the Internal Revenue Service may not coincide precisely with actual depreciation, it must be deducted from self-employed claimant's gross earnings); *Nortrim, Inc. v. Workmen's Compensation Appeal Bd.,* 150 Pa.Cmwlth. 196, 615 A.2d 873, 875–76 (1992) (depreciation should be deducted from gross earnings when calculating average weekly wage for workers' compensation benefits). *See also Licor v. Washington Metro. Area Transit Auth.,* 879 F.2d 901 (D.C.Cir.1989), and 2 Arthur Larson, *Workmen's Compensation Law* § 60.12(e) (1992). We are of the opinion that this authority properly construes the nature of depreciation deductions and their

relationship to a self-employed claimant's average weekly income.

Therefore, we reject the holding of *Petruska* and the primary authority relied on in rendering that decision—*Broussard v. Zim's Alignment Service, Inc.,* 488 So.2d 395, 396 (La.App.1986) (depreciation is nothing more than a means of inducing the continuance of one's business). We elect to follow the majority rule which requires that depreciation be considered in determining the amount of temporary partial disability benefits to which a claimant is entitled to receive. To the extent that *Petruska* is inconsistent with this conclusion, it is overruled.

### B

In reaching this conclusion, we do not establish a per se rule of depreciation deduction for the simple reason that it would be manifestly unjust to require, in all circumstances, that *any* depreciation deduction taken on a claimant's income tax return be considered in computing post-injury average weekly wage. The amount of a depreciation deduction must bear some logical relationship to a self-employed claimant's actual diminution in earnings as a result of capital expenditures. Consequently, we hold that only a reasonable depreciation deduction should be considered in calculating a claimant's post-injury average weekly wage. Moreover, because the claimant bears the burden of showing the statutory entitlement to compensation by a preponderance of the evidence, *Olson v. Erickson,* 105 Colo. 489, 99 P.2d 199 (1940), *Wierman v. Tunnell,* 108 Colo. 544, 120 P.2d 638 (1941), the burden of establishing the reasonableness of depreciation deductions for purposes of workers' compensation benefits also must rest with the claimant.[4]

4. Such a showing does not require a claimant to justify the accounting methods prescribed by the federal government for income tax purposes. To the contrary, it merely requires a claimant to show that any claimed depreciation deductions in fact conform to those methods.

In the event that a claimant declared depreciation deductions to which he was not entitled under the federal income tax laws, it would be inequitable to allow such deductions to be used in diminishing a claimant's post-injury average

In the present case, the ALJ initially awarded claimant $174.98 per week in benefits based on his 1990 federal income tax return. That return shows that claimant took total depreciation deductions of $4,610. No evidence was presented, however, which established what that depreciation deduction was for, nor was any evidence presented concerning the reasonableness of subtracting that deduction in full from claimant's gross income for 1990. Consequently, the ALJ must reconsider her award of workmen's compensation benefits in light of the legal standards set forth above and claimant must show, by a preponderance of the evidence, the depreciation deductions which reasonably should be included in calculating his benefits.

### C

For the foregoing reasons, we reverse the court of appeals decision and remand the case to that court with instructions to return to the Industrial Claim Appeals Office for remand to the ALJ to recompute the amount of workmen's compensation benefits to which claimant is entitled in conformity with the opinions expressed herein.

ERICKSON, J., concurs in part and dissents in part, and SCOTT, J., joins in the concurrence and dissent.

Justice ERICKSON concurring in part and dissenting in part:

This court granted certiorari to decide whether a self-employed person claiming temporary partial disability benefits pursuant to the Workers' Compensation Act of Colorado, §§ 8–40–101 to 8–47–209, 3B C.R.S. (1986 & 1993 Supp.), may obtain credit for amounts which he deducted as depreciation from his gross income on his federal tax return when computing his average post-injury weekly wage. The majority holds depreciation must be considered in determining the claimant's average post-injury weekly wage in part IIA of the opinion. I concur in part IIA. The majority also holds the depreciation deduction must bear "some logical relationship to a self-employed claimant's actual diminution in earnings as a result of capital expenditures" and remands the case to determine if the depreciation deduction was reasonable. Because of the inequity of placing the burden on the claimant to justify the method the federal government uses to calculate depreciation, I dissent to part IIB.

The majority correctly recognizes that depreciation is an accounting method for allocating a capital asset's cost over its useful life. Generally Accepted Accounting Principles (GAAP) require that a systematic and rational procedure be used to allocate expenses to the periods during which the related assets are expected to provide benefits. Martin A. Miller, *GAAP Guide 1991* § 11.01 (1991). GAAP recognizes a broad range of depreciation methods including straight line and double declining balance.[1] *Id.* at §§ 11.04 to 11.09. The federal government utilizes a depreciation model based on a combination of the double declining balance and straight line models. I.R.C. § 168(b)(1). The system is referred to as the Modified Accelerated Cost Recovery System (MACRS). In addition to the depreciation calculated using MACRS, the taxpayer is also allowed to expense an additional amount in the first

---

weekly wage and, correspondingly, increase the amount of workers' compensation benefits awarded. Thus, a claimant need only show that claimed depreciation deductions are allowable under the income tax laws in order to carry his burden of proving that those deductions are reasonable. Moreover, because the possibility of error or fraud may arise, an employer is free to present evidence to rebut any showing that such deductions are reasonable.

1. The purpose of using an accelerated depreciation method, such as the double declining balance method, is to correctly reflect the fact that some assets' expected productivity and revenue earning power are greater during the earlier years of the assets' life. In addition, maintenance expenses may increase during the assets' life. These two factors make accelerated depreciation the best model for cost allocation in many situations.

year an asset is placed in service. I.R.C. § 179. The total of section 179 depreciation and MACRS depreciation is the amount that a taxpayer deducts from his gross income on his federal tax return.[2]

In my view, *Fireplace Equipment v. Petruska*, 796 P.2d 75 (Colo.App.1990), was wrongly decided because it ignores the fact that a business incurs expenses as a result of purchasing equipment. Even if the amount deducted by a taxpayer for depreciation on his federal income tax return does not allocate depreciation expense properly, the expense cannot be ignored. By failing to adopt some method of expense recognition and allocation, the court in *Petruska* adopted a method of computing a claimant's post-injury earnings that overstates his earnings and thus undercompensates the claimant.

Once the majority recognizes that the expense of purchasing an asset has to be allocated over the asset's life and deducted from gross income to determine post-injury earnings, the question is whether the federal method of allocating the expense of the capital asset is reasonable. The majority remands the case so the administrative law judge (ALJ) can make this determination and places the burden on the claimant to justify the federal method used for calculating depreciation expense. What the majority requires the claimant to do is to justify the federal government's method of calculating depreciation as a matter of ac-

counting theory. Placing this burden on the claimant is unfair.

Congress had two principle purposes for replacing more traditional depreciation methods with an accelerated cost recovery system: first, traditional depreciation rules were too complex and involved too many disputes about "inherently uncertain" values of useful life and salvage value; and second, accelerating cost recovery was designed to encourage capital investment.[3] S.Rep. No. 144, 97th Cong., 1st Sess. 47 (1981) U.S.Code Cong. & Admin.News 1981, 105. MACRS's major change to traditional accounting methods is that property is classified into categories which designate an asset's "recovery period" and all assets are presumed not to have salvage value. I.R.C. § 168. By creating categories for types of personalty and eliminating the concept of salvage value, Congress diminished the frequent disagreements between taxpayers and the IRS about the useful life and salvage value of specific assets.

For the class of asset at issue in this case, MACRS requires the use of a five year recovery period. Two traditional accounting models for depreciation are then applied to yield the depreciation for each year. The net result of this calculation is that the depreciation is greater in the first years of the asset's life and then levels out for the remainder of the asset's life.[4] The early recognition of expense is further in-

2. The majority notes that the figure the claimant in this case deducted as depreciation on his federal income tax return was $4,610. This figure is derived from the aggregate of the claimant's section 179 and MACRS depreciation. The taxpayer computes the aggregate depreciation deduction using IRS form 4562. The claimant filed form 4562 in 1990 and arrived at the figure $4,610. This form was used as evidence by the administrative law judge.

3. Adopting an accelerated depreciation model encourages capital expenditure by allowing a business to expense a large portion of an asset when the company first uses the asset. In effect, a business can offset revenue by purchasing capital assets. The investment incentive is amplified by section 179 which increases the depreciation in the year the asset is placed in

service and in the years that any excess deduction is carried forward. I.R.C. § 179.

4. The five year life ascribed to the asset by the I.R.C. means under the straight line method each year of the asset's life one-fifth (.20) of the basis would be allowed as depreciation. The double declining balance method multiplies twice the percentage that would be applicable if the straight line method were utilized, (i.e. 2 × .20 = .40), to the basis to determine the depreciation for each year. The difference between these two methods is the straight line method recognizes an equal expense each year while the double declining balance method recognizes the largest depreciation in the first year; in each subsequent year the depreciation diminishes.

MACRS applies the double declining balance method until the straight line method would

creased if a taxpayer elects to recognize section 179 depreciation. I.R.C. § 179. *See generally* Steven C. Thompson & William R. Simpson, *Final Regulations Offer Guidance for Expensing Depreciable Assets,* 1993 Taxes 309; John M. Beehler, *Expensing Depreciable Assets,* 1992 Tax Adviser 12.

The majority requires the claimant to prove that the depreciation deduction bears some logical relationship to the claimant's actual diminution in earnings as a result of capital expenditures. The test espoused by the majority is that the depreciation be reasonable. The federal model of recognizing depreciation is not an unreasonable or illogical method of attempting to match revenue and expense. Congress has determined that the method is sufficiently logical to require taxpayers to comply with it and, although part of the rationale for selecting the model was to encourage investment, it is based on standard models. The federal model may not be the best depreciation model, but to refuse to allow a claimant to use a system of accounting that the federal government requires taxpayers to

follow because it is irrational is hypocritical. I would not foreclose the opportunity to prove that a closer matching of revenue and expense is possible under a different model, but the claimant should not bear the burden of unraveling a theoretical debate on expense recognition.

I would hold that once a claimant offers evidence of his depreciation expense under any reasonable model, including the federal model, he has met the burden of showing he is entitled to a deduction for depreciation.[5] If the party opposing the claimant asserts that the federal model does not result in proper matching of expense and revenue over the life of the asset, it would be the opposition's burden to present evidence of a more effective model.[6]

The fact the federal government adopted MACRS, the accessibility to the claimant's depreciation statistics, and the benefit of not forcing the claimant to compare the federal method to other depreciation methods makes the federal model a reasonable mechanism for determining depreciation when calculating post-injury earnings.[7] The majority opinion forces a claimant to

---

yield a larger allowance; once this point is reached, the straight line method replaces the double declining balance method. I.R.C. § 168(b)(1). Under the convention that the property is placed in service for half a year in the first period and half a year after the last period, I.R.C. § 168(b)(2)(B), the percentages for each year are: Year 1 = .20; Year 2 = .32; Year 3 = .192; Year 4 = .1152; Year 5 = .1152; Year 6 = .0576. (Compare percentages under the straight line method following the half-year convention: Year 1 = .10; Year 2 = .20; Year 3 = .20; Year 4 = .20; Year 5 = .20; Year 6 = .10).

5. Claimants as a group are not benefitted by adopting the federal model of depreciation. It is possible to argue that when MACRS is compared to the straight line method, a claimant who files a claim in the early years of expensing a capital asset is overcompensated. Based on a comparison with the straight line method, however, the nature of MACRS means if a claimant files in the later years of expensing a capital asset he would be undercompensated.

6. The party opposing a claimant has a number of options in attempting to prove the depreciation deducted by a claimant on his federal tax

return does not represent a proper allocation of expense. When depreciation for tax purposes differs from depreciation for financial accounting purposes, GAAP requires a company to maintain a record of the difference. Accounting for Income Taxes, Statement of Financial Accounting Standards No. 96 (Fin. Accounting Standards Bd.1991). In addition, if a claimant has a large section 179 deduction which is carried forward, it could result in improper expense allocation because section 179 is purely the result of a federal policy of encouraging capital investment. The opposing party could eliminate the effect of the section 179 deduction and compute the depreciation using only MACRS. Only as a last resort would an opposing party have to delve into complex pro forma depreciation calculations based on useful life and salvage value that are necessary under traditional depreciation methods.

7. The proper allocation of the expense of a capital asset to the revenue the asset creates is one of the most confusing subjects in accounting theory. *Handbook of Modern Accounting* (Sidney Davids ed. 1970) ("On no subject in accounting has there been so much written and so much confusion as on the subject of depreciation.").

raise, and an ALJ to resolve, complex issues the federal model was designed to avoid—a determination of useful life and salvage value required by other depreciation methods. This can only create constant and wasteful court disputes over application of theoretical models.

Accordingly, I would remand to the Industrial Claim Appeals Office with directions to remand to the ALJ so the ALJ can vacate her supplemental order dated October 22, 1991 and, in the absence of conclusive evidence of a better estimate of depreciation than the depreciation deducted from the claimant's 1990 federal tax return, with directions to reinstate the original order of temporary partial disability benefits dated June 10, 1991.

SCOTT, J., joins in this concurrence and dissent.

