DARRELL D. HULL, APPELLEE AND CROSS–APPELLANT, V. AETNA INSURANCE COMPANY, APPELLEE AND CROSS–APPELLEE, AND CONTINENTAL WESTERN INSURANCE COMPANY, APPELLANT AND CROSS–APPELLEE.

529 N.W.2d 783

Filed March 31, 1995. No. S–93–887.

Dallas D. Jones and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Timothy C. Phillips, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellee Hull.

Richard R. Endacott and Brett W. Berg, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Aetna Ins. Co.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

FAHRNBRUCH, J.
Darrell D. Hull, a self-employed dentist, seeks workers'

compensation for an occupational illness which could be traced through the coverage periods of two successive insurers.

Both insurance carriers, Continental Western Insurance Company (Continental) and Aetna Insurance Company (Aetna), contend they are not liable. Both insurance carriers base their defenses on the last injurious exposure rule.

The Nebraska Court of Appeals dismissed this appeal on the ground that the Workers' Compensation Court three-judge review panel's remand to the trial judge did not constitute a final, appealable order. *Hull v. Aetna Ins. Co.*, 94 NCA No. 32, case No. A-93-887 (not designated for permanent publication).

We reverse the decision of the Court of Appeals and address (1) the liability of successive insurance carriers to a claimant suffering a lengthy occupational illness or disease and (2) the calculation of a self-employed claimant's average weekly wage.

## ASSIGNMENTS OF ERROR

On a petition for further review, Hull and Continental assign as error that the Court of Appeals failed to find that the Workers' Compensation Court review panel entered a final, appealable order. Hull also claims that the Court of Appeals erred in dismissing the appeal without addressing his errors assigned on appeal.

## STANDARD OF REVIEW

Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. See, Neb. Rev. Stat. § 48-185 (Reissue 1993); *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). A judgment, order, or award of the compensation court may be modified, reversed, or set aside if the record does not contain sufficient competent evidence to warrant the making of the order, judgment, or award. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

## FACTS

### MEDICAL HISTORY

Hull began the practice of dentistry in 1952 in Fairbury. In 1960, Hull experienced an outbreak of contact dermatitis caused by methyl methacrylate, a polymer component utilized in temporary dental reconstruction.

Hull did not experience any further problems with dermatitis until June 1987. He then experienced another episode of contact dermatitis related to methyl methacrylate. In October 1987, Hull also began experiencing pulmonary problems.

In June 1988, Hull suffered a severe episode of contact dermatitis affecting most of his fingers, the palms of both hands, and other parts of his body. The dermatitis caused Hull to miss, in the aggregate, approximately 1 week of work. Hull's condition progressively worsened, and Hull observed a relationship between time spent in the office and his skin and pulmonary problems.

On March 13, 1989, Dr. Rudolf Strnot, a dermatologist, treated Hull for contact dermatitis and autoeczematization on Hull's face, arms, and torso. Dr. Strnot recommended that Hull cease practicing dentistry. That same month, Dr. Anup Chakraborty, a specialist in pulmonology, also recommended to Hull that he quit dentistry. Hull decreased his dental practice to less than 10 hours per week.

In June 1989, Hull was examined by specialists at the University of Nebraska Medical Center. Dr. Suzanne Braddock, a dermatologist, and Dr. Robert Waldman, dean of medicine at the medical center, each determined that the causative agent for Hull's contact dermatitis broadened to include many potential agents in the dental office. In January 1991, Hull terminated his dental practice. Since he left the practice, Hull's dermatitis problems appear completely eliminated and the pulmonary problem has improved. Since September 1990, Hull has worked as a flight instructor.

### WORKERS' COMPENSATION COVERAGE

Continental's workers' compensation policy covered Hull from October 15, 1987, to October 15, 1988. Aetna covered Hull from October 15, 1988, to October 15, 1990. Aetna paid

Hull temporary total disability benefits of $245 per week from December 21, 1989, to December 19, 1990. Aetna also paid some medical expenses incurred by Hull.

Aetna referred Hull to Karen L. Stricklett, a vocational rehabilitation consultant. On January 13, 1993, Stricklett determined Hull's loss of earning capacity based upon income tax returns for 1987, 1988, and 1989. Stricklett averaged Hull's 1987 and 1988 business incomes to $12,050 per year and concluded that Hull's loss of earning capacity fell within the 10- to 15-percent range.

### Procedural History

On July 29, 1992, Hull filed an amended petition in the Workers' Compensation Court against Continental and Aetna. Hull alleged personal injury and disability from occupational asthma and contact dermatitis caused by exposure to chemicals and compounds associated with dentistry. Hull alleged that he earned approximately $1,374.57 per week when he sustained the injury on March 13, 1989.

The trial court applied the last injurious exposure rule and found Aetna to be the sole liable defendant. Based upon an average weekly wage of $571.80, the trial court ordered Aetna to pay Hull $245 per week for 98 weeks of temporary total disability and $43.48 per week for 202 weeks, representing a 12.5-percent permanent loss of earning power. The court also ordered Aetna to reimburse certain medical expenses and pay for future treatment.

A three-judge review panel of the Workers' Compensation Court disagreed with the use of the last injurious exposure rule and held that the date of injury determines liability when there is one employer and several insurers. Thus, the review panel vacated the award made by the trial court and remanded the case for a determination of the date of Hull's injury.

Hull and Continental appealed to the Court of Appeals. Both parties assigned as error that the review panel failed to apply the last injurious exposure rule. Hull also claimed that the review panel erred in failing to determine the proper amount of compensation due Hull and in using Hull's income tax returns to determine his net income in order to calculate his average

weekly wage.

The Court of Appeals held that the review panel's order did not affect a substantial right of the parties. As a result, the court dismissed the appeal on the ground that the review panel did not reach a final, appealable order.

## ANALYSIS

### JURISDICTION

The three types of order which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. Neb. Rev. Stat. § 25-1902 (Reissue 1989).

Special proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes. *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). The Nebraska Revised Statutes provide for workers' compensation under chapter 48. Thus, workers' compensation actions are special proceedings. Therefore, the review panel entered a final order if the order affected a substantial right.

A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Jarrett v. Eichler, supra*.

In *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994), a district court's order reversing a decision and remanding a cause to the county court was appealed to the Nebraska Court of Appeals. The Court of Appeals dismissed the appeal on the grounds that the order was not a final order. We reversed the decision of the Court of Appeals and held that the district court entered a final order because it took away a county court judgment rendered in favor of one of the parties.

In the case at bar, the trial court awarded Hull benefits and found Aetna as the only liable party. The Workers' Compensation Court review panel vacated a judgment in favor of Hull and which dismissed Continental from the lawsuit.

Clearly, the order affected a substantial right of Hull and Continental. By the action of the Workers' Compensation Court panel, Hull was deprived of an award in his favor and Continental was deprived of a finding of no liability on its part.

## CARRIER LIABILITY

All parties agree that the last injurious exposure rule, as analyzed in 4 Arthur Larson, The Law of Workmen's Compensation § 95.20 (1994), applies to the case at bar. We agree. Of issue is whether the last injurious exposure rule focuses upon the date of injury, as argued by Aetna, or upon the last exposure that caused the disability, as argued by Continental.

Where a worker has contracted an occupational disease by exposure to a harmful substance over a period of years in the course of successive employers or insurers, the employer who most recently exposed the worker to the harmful substance, or that employer's insurer, is liable to pay the entire award. See *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). To assign liability we must address (1) the date that liability is premised upon and (2) the causal relationship between the exposure and disability.

Where an occupational disease results from the continual absorption of small quantities of some deleterious substance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be injured only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation. *Id.* Thus, the date that determines liability is the date that the employee becomes disabled from rendering further service. See *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 475 A.2d 1168 (1984).

Hull suffered from contact dermatitis due to substances in the workplace in 1960 and 1987 through 1990. It was not until March 1989, however, that his occupational disease manifested itself to a level of disability. Therefore, Hull became disabled and entitled to the workers' compensation he seeks on March 13, 1989, while covered by Aetna.

The mere date of disability, however, does not end the

inquiry. The second issue is the nexus between the exposure to the injury and the disability.

In the case of occupational disease, liability is most frequently assigned to the carrier who was covering the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease. The employer or insurer at the time of the most recent exposure which bears a causal relation to the disability is generally liable for the entire compensation. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987); *Osteen v. A. C. and S., Inc., supra*. See, also, *Labor & Industries v. Fankhauser*, 121 Wash. 2d 304, 849 P.2d 1209 (1993). This is comparable to the last injurious exposure rule, except that it places more stress on the moment of disability. *Bracke v. Baza'r*, 293 Or. 239, 646 P.2d 1330 (1982), citing 4 Larson, *supra*, § 95.21. If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. *Mendoza v. Omaha Meat Processors, supra*. On the other hand, if the insured's condition is not a true recurrence, but is brought about by any intervening or untoward event which could be deemed the proximate cause of the work–connected condition, the liability falls upon that insurer whose policy is in effect at the date of the new illness. *Standard Distributing Co. v. Nally*, 630 A.2d 640 (Del. 1993). This rule relieves the employee from proving specific medical causation as to any particular employer or insurance carrier of those potentially liable for the disability. Thus, the last employment that bears a causal relation to a worker's disability (by providing some potentially causal conditions or contributory exposure) is deemed to have caused the disease, even though the employee has not proved the last employment was the actual cause of the disability. See *Parks v. Flint Steel Corp.*, 755 P.2d 680 (Okla. 1988).

It is undisputed that Hull suffered from contact dermatitis while covered under Continental. Therefore, the determinative issue is whether the March 13, 1989, disability was a mere recurrence of the occupational disease dating back to

Continental's period of coverage or was the result of a new causative agent during Aetna's period of coverage.

In the original trial, the court found that during Aetna's coverage period, Hull was exposed to substances which caused the deterioration of his condition. The court's finding is supported by the conclusions of Drs. Braddock and Waldman that during the period of Aetna's coverage, Hull's dermatitis was caused by an expanding base of allergic agents. The trial judge was not clearly wrong in finding that Hull's disability came as a result of some causative agents during Aetna's coverage.

This may appear as a harsh rule, inasmuch as the contact dermatitis, in its origin, can be traced back to 1960. The law of averages, however, will spread the costs proportionately among insurers over time. *Labor & Industries v. Fankhauser, supra.* Thus, the rule equitably spreads the risk of liability for an occupational disease among the employers who expose workers to the danger of the disease and their respective carriers. *American Ins. Co. v. Indus. Com'n of Arizona*, 144 Ariz. 364, 697 P.2d 1114 (Ariz. App. 1984).

## COMPENSATION

Hull contends that when the compensation due him is calculated, the average weekly wage should be based upon gross income.

According to Neb. Rev. Stat. § 48–121(2) (Reissue 1993), the amount of compensation for permanent partial disability is $66^2/3$ percent of the difference between the wages received at the time of injury and the earning power of the employee thereafter, but not more than the maximum weekly income benefits specified in Neb. Rev. Stat. § 48–121.01 (Reissue 1993). Wages are defined in Neb. Rev. Stat. § 48–126 (Reissue 1993) as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident."

We held in *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949), that allowances made to an employee for board, lodging, or similar advantages shall represent a real and reasonably definite economic gain to the employee before they can be considered as wages for the purpose of computing compensation. We held in *Turner v. Beatrice Foods Co.*, 165

Neb. 338, 85 N.W.2d 721 (1957), that where an employee's wages averaged $100 per week, an additional $6 a week the employee received as tax–exempt expense money was not included as wages for purposes of workers' compensation. Nevertheless, we have not addressed whether a self–employed claimant's business expenses are wages for workers' compensation purposes.

Hull relies upon *Filippone v. Indust. Comm'n*, 41 Colo. App. 322, 590 P.2d 977 (1978), to argue that business expenses deductible from a self–employed claimant's gross income are not deducted from the calculation of average weekly wage. More recently, however, Colorado appellate courts have disapproved the holding in *Fillipone* and now hold that business expenses should be deducted in determining a self–employed claimant's wages. See, *Tozer v. Scott Wetzel Services, Inc.*, 883 P.2d 496 (Colo. App. 1994); *Elliott v. El Paso County*, 860 P.2d 1363 (Colo. 1993). Other states also hold that a self–employed claimant's average weekly wage must be offset by the claimant's business expenses. See, *Pioneer Const. v. Conlon*, 780 P.2d 995 (Alaska 1989); *Happle Solar Contractors v. Happle*, 547 So. 2d 1035 (Fla. App. 1989). We find these holdings consistent with our analysis in *Solheim v. Hastings Housing Co., supra*, and *Turner v. Beatrice Foods Co., supra*. Therefore, we hold that a self–employed claimant's average weekly wage under § 48–121(2) shall be based upon the claimant's gross income less business expenses, i.e., net income.

Lastly, Hull asserted in the Court of Appeals that the trial court erred in calculating the amount Aetna must reimburse Hull for prescription drug expenses. The trial court ordered Aetna to pay Hull $1,108.80 for prescription drugs purchased from Stewart Pharmacy, as indicated in exhibit 18. This exhibit indicates that Hull purchased $1,108.80 worth of prescription drugs from Priefert Pharmacy, not Stewart Pharmacy. Exhibit 18 also indicates that Hull purchased prescription drugs from Stewart Pharmacy with two grand totals of $1,214.80 and $741.62. Thus, it appears that the trial court clearly erred in determining Hull's prescription drug expenses.

## CONCLUSION

The Workers' Compensation Court review panel's order

vacating the award entered by the trial court substantially affected the rights of Hull and Continental. Therefore, the review panel's order was a final, appealable order. Moreover, liability between successive insurers for a claimant's occupational illness is premised upon (1) the date that the accumulated effects of the illness manifest to the level of disability entitling the claimant to compensation and (2) the last carrier on risk that bears a causal relation to that disability. We reverse the judgment and remand this cause to the Nebraska Court of Appeals with direction to remand the cause to the Workers' Compensation Court to enter judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.