DON KUBIK, APPELLANT, V. UNION INSURANCE COMPANY AND
ST. PAUL FIRE & MARINE, APPELLEES.

550 N.W.2d 691

Filed July 2, 1996.   No. A–95–1043.

Rod Rehm, P.C., for appellant.

Andrew S. Pollock, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

MILLER–LERMAN, Chief Judge, and IRWIN and INBODY, Judges.

INBODY, Judge.

Don Kubik appeals from the order of a Workers' Compensation Court review panel which affirmed the order of award entered by a trial judge. Kubik contends that the court erred (1) by finding that a reasonable controversy existed which barred the award of waiting–time penalties, attorney fees, and interest and also (2) by failing to assign an independent medical examiner. For the reasons recited below, we affirm in part, and in part reverse and remand with directions.

## STATEMENT OF FACTS

Don Kubik had been employed by Union Insurance Company (Union) since 1987 as a systems consultant. On August 31, 1990, Kubik suffered bilateral carpal tunnel syndrome as a result of an accident arising out of and in the course of his employment.

As a result of the symptoms, Kubik saw Dr. Thomas Green, a chiropractor, who had previously treated Kubik for various ailments. Dr. Green then referred Kubik to Dr. William Garvin, an orthopedic surgeon. Dr. Garvin performed surgery on Kubik's right wrist in November 1990 and on Kubik's left wrist in May 1992. On September 3, 1992, Dr. Garvin wrote that Kubik had a 5–percent permanent physical disability impairment rating in each wrist as a result of the carpal tunnel syndrome. Dr. Garvin also reported on September 3 that Kubik "has reached a plateau in terms of his recovery." Dr. Garvin later reported, however, that Kubik did not reach his maximum medical improvement until December 1, 1994.

After receiving Dr. Garvin's ratings, St. Paul Fire & Marine (St. Paul), the insurer for Union, sent Kubik a settlement offer on the compensation claim per letter dated September 18, 1992. The letter offered Kubik $4,462.50 of required compensation under the Workers' Compensation statutes, plus $187.50 in additional consideration to settle the claim. The letter also requested that Kubik telephone St. Paul to discuss the settlement. Kubik did not respond to this letter. On October 22, St. Paul sent Kubik another letter which stated that if he did not respond to the previous offer within 30 days, St. Paul would assume he was not interested in a lump-sum settlement and would begin making permanent partial disability payments. Kubik responded in a letter dated November 10, 1992, informing St. Paul that he rejected its lump-sum settlement offer and requested that benefits be paid to him in accordance with his disability rating. On November 16, St. Paul issued Kubik $4,462.50 for payment based on Dr. Garvin's rating.

On August 30, 1993, Kubik saw Dr. D.M. Gammel for a second opinion regarding the degree of disability to his wrists. In a report dated August 31, 1993, Dr. Gammel determined that Kubik had an impairment rating of 10 percent for the right wrist and 8 percent for the left wrist. Upon receiving Dr. Gammel's ratings, St. Paul sent Kubik a payment for the difference between what it had already paid and the average of Dr. Garvin's and Dr. Gammel's ratings.

On July 15, 1994, Kubik filed a petition for workers' compensation benefits and waiting-time penalties, attorney fees, and interest pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1993). On November 14, Kubik filed a request for an independent medical examiner pursuant to Neb. Rev. Stat. § 48-120(6) (Reissue 1993). Union and St. Paul filed an objection to the request on November 16. In an order dated November 30, 1994, the Workers' Compensation Court denied Kubik's request for the independent medical exam.

A hearing was held on Kubik's petition on January 6, 1995. In an order dated February 6, 1995, the workers' compensation court reaffirmed its earlier ruling which denied Kubik's request for an independent medical examination. The court also awarded Kubik permanent partial disability benefits based on 7

percent disability to his left wrist and 8 percent to his right wrist. The court, however, denied Kubik's claim for penalties, attorney fees, and interest, finding that a reasonable controversy existed.

Kubik filed an application for review, and a three-judge review panel heard the matter on July 31, 1995. The review panel affirmed the trial court's judgment on August 25. This appeal follows.

## ASSIGNMENTS OF ERROR

On appeal, Kubik asserts that the trial court erred by finding that Kubik was not entitled to waiting-time penalties, attorney fees, and interest and by denying Kubik's request for an independent medical examination.

## STANDARD OF REVIEW

■ The workers' compensation review panel may reverse or modify the findings, order, award, or judgment of the original hearing only on the grounds that the judge was clearly wrong on the evidence or the decision was contrary to law. Neb. Rev. Stat. § 48-179 (Reissue 1993); *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995); *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

■ A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Reissue 1993); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Kerkman v. Weidner Williams Roofing Co., supra*; *Scott v. Pepsi Cola Co., supra*; *Larson v. Hometown Communications, Inc., supra*.

When testing the sufficiency of the evidence to support the factual findings of the trial court, the evidence is considered in the light most favorable to the successful party, and the successful party is given the benefit of every inference reasonably deducible from the evidence. *Monahan v. United States Check Book Co., ante* p. 227, 540 N.W.2d 380 (1995). See, also, *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

## ANALYSIS

Kubik first asserts that the trial court should have awarded him waiting–time penalties in accordance with § 48–125. Section 48–125 authorizes a 50–percent penalty payment for waiting time where the employer fails to pay compensation after 30 days' notice of the disability and where no reasonable controversy exists regarding the employee's claim for benefits. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). Whether a reasonable controversy exists regarding § 48–125 is a question of fact. *Kerkman v. Weidner Williams Roofing Co., supra*; *Leitz v. Roberts Dairy*, 239 Neb. 907, 479 N.W.2d 464 (1992).

In *Mendoza*, the court set forth the following criteria to determine whether a reasonable controversy exists:

[A] reasonable controversy may exist . . . (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or part.

225 Neb. at 784–85, 408 N.W.2d at 288. See, also, *Kerkman v. Weidner Williams Roofing Co., supra*. In other words, to

avoid the payments assessable under § 48–125, the employer must have a reasonable basis in law or in fact for disputing the employee's claim and refraining from payment of compensation. *Kerkman v. Weidner Williams Roofing Co., supra; Mendoza v. Omaha Meat Processors, supra.*

In this instance, Union and St. Paul contend that the delay was justified because of their good faith efforts to settle Kubik's claim. In support of this conclusion, Union and St. Paul cite to *Powe v. City of New Orleans*, 346 So. 2d 886 (La. App. 1977). In *Powe*, the court held that an employer should not be penalized for making a good faith effort toward a lump–sum settlement, "particularly when the facts strongly imply a willingness on the part of all concerned to leave the matter open during the time when discussions are actively engaged in." *Id.* at 888.

The Nebraska Supreme Court addressed a similar issue in *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989), where the employer's insurance carrier had offered a lump–sum settlement in lieu of paying compensation to the employee. The court, after noting that the settlement failed to take into account the total extent of the injury, held that the employee was entitled to waiting–time penalties, attorney fees, and interest under § 48–125.

In *Musil*, the court considered what constituted an "actual basis, in law or fact, for disputing the employee's claim." *Id.* at 905, 448 N.W.2d at 594. In so doing, the court quoted 3 Arthur Larson, The Law of Workmen's Compensation § 83.41(c) (1989), which stated:

> "If bona fide settlement negotiations accompany the nonpayment of compensation, this may purge the delay or refusal of unreasonableness, but the fact that some settlement offer has been made is not necessarily a defense. A question that has arisen in several jurisdictions is whether a penalty should apply when the employer admits liability for a lesser amount than that claimed, but pays nothing. *It is usually held that the employer should have paid at least the amount for which liability was undisputed, and that a penalty is therefore warranted.*"

(Emphasis supplied in *Musil.*) *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. at 905–06, 448 N.W.2d at 594.

Further, the court cited to several cases for the proposition that although the total amount of compensation due may be in dispute, the employer's insurer nevertheless has a duty to promptly pay that amount which is undisputed, and the only legitimate excuse for delay of payment is the existence of genuine doubt from a medical or legal standpoint that any liability exists. See, *Holton v. F.H. Stoltze Land Lbr. Co.*, 195 Mont. 263, 637 P.2d 10 (1981); *Dufrene v. St. Charles Parish Police Jury*, 371 So. 2d 378 (La. App. 1979); *Bradley v. Mercer*, 563 P.2d 880 (Alaska 1977); *Berry v. Workmen's Comp. App. Bd.*, 276 Cal. App. 2d 381, 81 Cal. Rptr. 65 (1969); *Lethermon v. American Insurance Company*, 129 So. 2d 507 (La. App. 1961).

In this instance, the fact that St. Paul made a settlement offer by itself does not show the existence of an actual dispute as to liability. However, St. Paul and Union argue, and the trial court found, that other factors indicate the existence of a reasonable controversy which would excuse the delinquent payment. Specifically, the trial court found evidence that a reasonable controversy existed because (1) Kubik failed to respond to St. Paul's first letter of settlement, (2) the petition Kubik filed included "symptomology well beyond bilateral carpal tunnel," and (3) there was a question as to when maximum medical improvement was reached.

Although Kubik did not respond to St. Paul's first letter of settlement, there is nothing in the record which indicates that his silence was the result of a controversy regarding Union's liability. In fact, Kubik testified that he simply did not know how to respond to the letter and that he was not interested in settling the claim. Moreover, St. Paul's first letter of settlement indicates that there was no dispute as to the 5–percent permanent disability rating. Specifically, in the letter, St. Paul stated:

> Dr. Garvin has given you a 5% permanent physical impairment rating to each hand as a result of your carpal tunnel syndrome. He also indicates that you have reached a plateau in terms of your recovery. According to the

Nebraska Workers' Compensation Statutes a hand is equal to 175 weeks of disability benefits; 5% of 175 is equal to 8.75 weeks times 2 equals 17.5 weeks at the rate of $255 per week for a total of $4,462.50. I am willing to add additional consideration in the amount of $187.50 for a total of $4,650 to conclude your claim. After you have had an opportunity to review these figures, please call me to discuss settlement.

In short, there is no evidence in the record to support the finding that Kubik's failure to respond to St. Paul's settlement offer was due to a controversy regarding St. Paul's liability in some degree.

The trial court also found that a reasonable controversy existed because Kubik alleged symptoms in his petition which were inconsistent with his actual diagnosis. St. Paul asserts that because Kubik failed to allege in his application for review that this specific finding was in error, he has waived his right to assert that this finding is incorrect. Indeed, § 48-179 provides that the "party or parties appealing for review shall be bound by the allegations of error contained in the application [for review] and will be deemed to have waived all others." However, paragraph 2 of Kubik's application for review asserts that "[t]he Court's findings of fact in Paragraph VII are in error because . . . [Kubik] was not disputing the only rating at the time . . . ." We find that this allegation is sufficient to assign as error the above finding by the trial court.

In his petition, Kubik alleged that the nature and extent of his injury was "bilateral carpal tunnel syndrome; ulnar neuritis, right elbow region; flexor tendinitis, right wrist; traumatic neuroma ulnar digital nerve, right thumb." However, Kubik failed to produce any diagnosis of an injury except for that of bilateral carpal tunnel syndrome. As a result, the trial court found, assuming Kubik had been consistent in his allegations as to the nature and extent of his injury, a reasonable controversy existed with respect to those injuries for which there was no diagnosis. However, while a dispute may have existed as to those described injuries which were not diagnosed, this does not necessarily indicate that there was a controversy as to the nature and extent of the injury that was diagnosed and undisputed. As

was stated in *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 905-06, 448 N.W.2d 591, 594 (1989), " '[T]he employer should have paid at least the amount for which liability was undisputed . . . .' " (Emphasis omitted.) The fact that Kubik alleged additional injuries for which there was no diagnosis does not support the finding that there was a dispute regarding the injury for which there was a diagnosis.

Finally, the trial court found that there was some question as to when Kubik had reached maximum medical improvement and what his permanency rating was. The record indicates that on September 3, 1992, Dr. Garvin noted that Kubik "has reached a plateau in terms of his recovery" and then assigned Kubik a 5-percent permanent physical impairment to each hand. However, in a workers' compensation medical report signed by Dr. Garvin on December 1, 1994, he stated that Kubik did not reach maximum medical improvement until December 1, 1994. In addition, Dr. Gammel, who examined Kubik on August 30, 1993, found that Kubik had reached maximum medical improvement and assigned him a 10-percent permanent physical impairment rating to his right hand and an 8-percent rating to his left hand.

Indeed, if Kubik had not reached maximum medical improvement until December 1, 1994, St. Paul would have had no obligation to begin payments for a permanent disability pursuant to Neb. Rev. Stat. § 48-121 (Reissue 1993) until that time. However, the record indicates that despite Dr. Garvin's statement of December 1, maximum medical improvement was in fact reached in September 1992. Dr. Garvin not only found in September 1992 that Kubik had "reached a plateau in terms of his recovery," but he also at that time assigned a *permanent* disability rating. Furthermore, while Kubik went back to see Dr. Garvin on four occasions between September 1992 and December 1994, the record does not show that Kubik was receiving any rehabilitation or that he was submitting to treatment, convalescing, or unable to work because of the injury. See *Uzendoski v. City of Fullerton*, 177 Neb. 779, 131 N.W.2d 193 (1964). In addition, there is no evidence that Kubik's condition was going to improve after September 1992 or that it did in fact improve. Therefore, the evidence supports

the conclusion that Kubik reached maximum medical improvement in September 1992.

Moreover, the fact that Dr. Gammel later gave Kubik a higher permanent disability rating for his injury does not show that there was a dispute that Kubik had suffered *at least* a 5-percent disability rating. While there may have been a question as to whether Kubik was injured to a greater extent than the 5-percent disability rating, there is no evidence to support a finding that a dispute or reasonable controversy existed concerning the 5-percent disability rating. As a result, St. Paul does not have an excuse for not paying that undisputed amount within the 30-day timeframe established under § 48-125. Therefore, we find that the trial court was clearly wrong in not awarding Kubik a waiting-time penalty, attorney fees, and interest pursuant to § 48-125.

Kubik next argues that he was entitled to an independent medical examination because a dispute later resulted between the disability rating given by Dr. Gammel and the amount which St. Paul supplemented its earlier payment. However, the record shows that the only dispute which exists is that between the rating of the disability given by Dr. Garvin and the later higher rating given by Dr. Gammel. St. Paul simply paid the average between the two ratings. Section 48-120(6) provides in part:

> The Nebraska Workers' Compensation Court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished or to be furnished and shall have authority to order a change of physician, hospital, rehabilitation facility, or other medical services when it deems such change is desirable or necessary. Any dispute regarding medical, surgical, or hospital services furnished . . . may be submitted by the parties . . . for informal dispute resolution by a staff member of the compensation court . . . . In addition, any party may submit such a dispute for a medical finding by an independent medical examiner pursuant to section 48-134.01.

The clear language of this statute indicates that it was in the discretion of the trial court to determine the necessity, character, and sufficiency of any medical services furnished. Because both

Dr. Garvin and Dr. Gammel were physicians of Kubik's own choosing, there was no dispute between the two parties which an independent medical examiner needed to resolve. Therefore, we find that the trial court did not abuse its discretion in determining that the medical services furnished were sufficient to determine the extent of Kubik's injury.

## CONCLUSION

Because the evidence does not support the conclusion that there was a dispute that Kubik was injured at least to the extent of his 5-percent disability rating, we find that the trial court erred in not awarding waiting-time penalties, attorney fees, and interest for St. Paul's failure to timely pay Kubik compensation to the extent of the undisputed 5 percent. In addition, the trial court did not abuse its discretion in determining that the medical services provided were sufficient and did not warrant the appointment of an independent medical examiner.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.