ROBERT G. HALL, APPELLEE, V. GERMANTOWN STATE BANK
ET AL., APPELLANTS.

FILED FEBRUARY 23, 1921.   No. 21815.

1. **Master and Servant:** WORKMEN'S COMPENSATION ACT: PENALTIES.
   "Under the workmen's compensation act periodical instalments of
   compensation for an injury to an employee do not become due,
   in the sense that they carry the statutory penalties for nonpay-
   ment, until the obligation of the employer is definitely ascertained
   or, settled in the exercise of proper diligence on his part, where
   there is a reasonable controversy over the extent of the injury as a
   basis for the number of periodical payments and the amount of
   each." *Osborn v. Omaha Structural Steel Co., ante,* p. 216.

2. ———: ———: ———. Where in such action the controversy
   is over the percentage of loss of the use of an injured arm, and
   where the testimony in behalf of the employer admits a given
   percentage of permanent partial disability, such employer, to be
   relieved of the penalty provided in the act for nonpayment, must
   pay or tender to the employee the amount admittedly due.

3. **Evidence** examined, and *held,* in part to present a reasonable con-
   troversy as to the extent of the injury.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. *Affirmed on condition.*

*Hall, Baird & Williams,* for appellants.

*R. J. Greene,* contra.

DAY, J.

This is an appeal by the defendants from a judgment
of the district court for Lancaster county awarding plain-
tiff compensation, together with a penalty for waiting
time and an attorney's fee, in an action arising under the
provisions of the workmen's compensation act.

On December 18, 1919, the plaintiff, while employed as
a brick-mason by the defendant Germantown State Bank
suffered a fracture of the head of the radius at the right
elbow joint.   It is conceded that the injury arose out
of and in the course of the employment, and also that

defendant Ocean Accident & Guarantee Corporation carried the risk and was properly made a party defendant. At the time of the accident the plaintiff was earning $67.50 a week, which would entitle him to recover $15 a week compensation.

Following the accident the defendant insurance company voluntarily paid the plaintiff $15 a week for a period of 17 weeks, or up to April 13, 1920, at which time its agent informed the plaintiff that he was able to resume his work, that the company would pay no further sums on account of the injury, and that if he received any more he would have to get it though an award of the compensation commissioner. The plaintiff, thereupon, resumed his work at the former wages, performing it, however, with great pain and considerable disadvantage on account of the limitations in the use of his arm. He was not able to keep up the speed required in working for contractors and was finally obliged to forego that class of work.

A complaint was filed before the compensation commissioner by the plaintiff, and upon a hearing on September 10, 1920, an award was made that the plaintiff have and recover from the defendants the sum of $15 a week for a period of 22½ weeks, commencing April 15, 1920, together with medical and hospital expenses. From this award defendants appealed to the district court, where, upon a trial on October 25, 1920, it was adjudged that the plaintiff have and recover compensation from the defendants for a period of 22½ weeks at the rate of $15 a week, with interest thereon, and for waiting time— in all $480—together with an attorney's fee of $100.

It is argued by the defendants that the judgment allowing compensation for 22½ weeks is excessive and not supported by the evidence, and also that the court erred in allowing any sum as a penalty for waiting time. The testimony is clear that for a period of 17 weeks immediately following the accident the plaintiff was wholly incapacitated from performing his usual labor. At the ex-

piration of that period there existed a stiffness of the elbow joint and some limitation in the free movement of the arm. The case was tried upon the theory that the plaintiff had suffered a permanent partial loss of the use of his arm. The physician called on behalf of the defendants admitted that there was a slight limitation of the use of the arm, that there was a limitation of flexion of between one and three degrees, and gave his opinion that in terms of percentage the disability of the arm was "5 per cent. at most."

The plaintiff, in his own behalf, stated his inability to do the work as he had formerly done. He exhibited his arm to the court, and demonstrated, by going through various movements, the limitation of the natural movements of the arm. A letter was also received in evidence, without objection, from a physician who had examined the plaintiff's arm on August 14, 1920, which stated that the plaintiff had "joint irritation and strickening of right elbow; pronaton and supernation of right radius, about 10 to 15 per cent."

While the testimony may not be entirely free from doubt, we are fairly satisfied that the finding of the trial court that plaintiff was entitled to compensation for 22½ weeks is supported by the testimony. We are of the opinion, however, that the court misapplied the law to the facts in allowing a penalty for waiting time for the entire period of 22½ weeks. The controversy was over the extent of plaintiff's permanent partial loss of the use of his arm.

Under the provisions of the compensation act, an employee, for the loss of an arm, is entitled to receive compensation, at the rate designated, for a period of 225 weeks, and for the permanent partial loss of the use of an arm the compensation allowed is such proportion of the entire loss as the disability produced bears to the whole. Rev. St. 1913, sec. 3662, as amended by section 2, ch. 91, Laws 1919.

As we construe the testimony, the defendants' evidence is a practical admission that the plaintiff had suffered a 5 per cent. disability, which would entitle him to compensation for 11¼ weeks. The mere fact that the plaintiff was claiming a greater percentage of disability was no legal justification for the defendants withholding the payments admittedly due. In order to relieve themselves. from the penalty, the defendants should have at least made tender of the amount admittedly due. The plaintiff, on the other hand, was claiming that his disability was more than 5 per cent. of the loss of the use of his arm, and in this contention the court agreed with him and found that his disability was equal to 10 per cent., or for a period of 22½ weeks. Rev. St. 1913, sec. 3666, as amended by section 4, ch. 91, Laws 1919, provides in part:

"Except as hereinafter provided, all amounts of compensation payable under the provisions of this article shall be payable periodically in accordance with the methods of payment of the wages of the employee at the time of the injury or death. Provided, fifty *per centum* shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability."

Construing this provision in *Updike Grain Co. v. Swanson*, 104 Neb. 661, and *Osborn v. Omaha Structural Steel Co., ante*, p. 216, it was held that the periodical instalments of compensation for an injury to an employee do not become due, in the sense that they carry the statutory penalties for nonpayment, until the obligation of the employer is definitely ascertained or settled in the exercise of proper diligence on his part, where there is a reasonable controversy over the extent of the injury as a basis for the number of periodical payments and the amount of each. As we view the testimony, there was a reasonable controversy as to whether the plaintiff's disability exceeded 5 per cent. of the loss of use of his arm. Upon the whole record we are of the opinion that plaintiff is entitled to recover compensation for 22½ weeks at the rate

of $15 a week, together with the 50 per cent. penalty for one-half of that period, with interest thereon, and the attorney's fee allowed by the court. The defendants having succeeded in reducing the judgment of the trial court, no attorney's fee will be allowed in this court.

Although proper notice was not given by the plaintiff in his cross-appeal, we have considered it as though properly made, and conclude that the judgment of the district court is all that the plaintiff is entitled to recover under the record as made.

From what has been said, it follows that the judgment is excessive to the amount of $58.13. If plaintiff files a remittitur of $58.13 within 10 days, the judgment will be affirmed; otherwise, it will be reversed and remanded.

AFFIRMED ON CONDITION.