Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:07 PM CDT

Marlene Mosher, appellee, v.
Whole Foods Market, Inc., appellant.

___ N.W.3d ___

Filed July 5, 2024.    No. S-23-645.

1. **Workers' Compensation: Appeal and Error.** An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

3. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

4. **Workers' Compensation: Penalties and Forfeitures: Appeal and Error.** Whether a reasonable controversy exists is a question of fact. Accordingly, an appellate court reviews for clear error the compensation court's findings concerning reasonable controversy underlying its determination of waiting-time penalties. However, if the facts are not in dispute and the inference is clear such that reasonable people could not disagree about the matter, whether a reasonable controversy exists is a question of law.

5. **Workers' Compensation: Statutes: Appeal and Error.** The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

6. **Workers' Compensation: Attorney Fees.** Determining the amount for attorney fees under Neb. Rev. Stat. § 48-125(4)(a) (Reissue 2021) is

necessarily a question of fact that requires a factual determination on several factors.

7. **Workers' Compensation.** Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of maximum medical improvement, because a disability cannot be both temporary and permanent at the same time.

8. **Workers' Compensation: Time.** The date of maximum medical improvment for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident.

9. **Workers' Compensation.** When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, "permanent" within the meaning of the Nebraska Workers' Compensation Act.

10. ____. Neb. Rev. Stat. § 48-125 (Reissue 2021) does not distinguish between whether the disability is temporary or permanent, but refers to all amounts of compensation payable under the Nebraska Workers' Compensation Act.

11. ____. The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purpose of providing compensation to employees injured on the job.

12. ____. The purpose of Neb. Rev. Stat. § 48-125 (Reissue 2021) is to encourage prompt payment of workers' compensation benefits by making the delay costly if an award is finally established.

13. **Workers' Compensation: Attorney Fees: Penalties and Forfeitures.** The waiting-time penalty and attorney fees are available under Neb. Rev. Stat. § 48-125 (Reissue 2021) in cases brought to the Workers' Compensation Court only where there is no reasonable controversy regarding an employee's claim for workers' compensation.

14. **Workers' Compensation: Attorney Fees: Words and Phrases.** A "reasonable controversy" for the purpose of Neb. Rev. Stat. § 48-125 (Reissue 2021) exists (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.

15. **Workers' Compensation.** Although the total amount of compensation due may be in dispute, the employer's insurer nevertheless has a duty to promptly pay that amount which is undisputed.

16. ____. The only legitimate excuse for delay of payment of workers' compensation benefits is the existence of genuine doubt from a medical or legal standpoint that any liability exists.

17. **Workers' Compensation: Time.** The fact that a portion of a disability may be in dispute does not allow an employer to withhold payment of all disability from a workers' compensation claimant, but, rather, the employer must pay, within 30 days of accrual, the payments that are undisputed.

18. **Workers' Compensation: Statutes: Time.** Absent a genuine dispute that any liability exists, it is the statutory obligation of the employer and its workers' compensation insurer to begin making weekly payments no later than expiration of 30 days after notice of disability.

19. **Workers' Compensation.** It would be contrary to our precedent, the language of Neb. Rev. Stat. § 48-125 (Reissue 2021), and the beneficent purposes of the Nebraska Workers' Compensation Act for an employer, with impunity, to fail to pay any indemnity benefits when there is no reasonable controversy as to the employee's entitlement to indemnity benefits and the only reasonable dispute is whether or when the employee has reached maximum medical improvement such that the benefits should be for a permanent partial disability rather than for temporary total disability.

20. **Workers' Compensation: Penalties and Forfeitures.** As opposed to an unanswered question of whether the employee was entitled to any compensation or medical payments, a question unanswered by the Supreme Court as to whether waiting-time penalties are properly imposed or calculated under the facts presented does not prevent the imposition of waiting-time penalties.

21. **Workers' Compensation: Attorney Fees.** The determination of the amount of attorney fees to be awarded under Neb. Rev. Stat. § 48-125(4)(a) (Reissue 2021) is necessarily a question of fact that requires a factual determination on several factors, including the value of legal services rendered by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

22. ____: ____. The amount involved in the claim is but one factor, and the amount of the attorney fees is not necessarily limited to legal work performed in recovering a specific, unpaid medical bill or delinquent compensation.

23. **Workers' Compensation: Attorney Fees: Appeal and Error.** An appellate court gives great deference to the compensation court's

determination of reasonable attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2021), which determination will not be disturbed on appeal unless it is clearly wrong in light of the evidence.

24. **Workers' Compensation.** Nonpayment of medical bills can have an extremely deleterious result for an injured worker, including delaying necessary medical care, which can result in a more severe permanent injury.

25. **Workers' Compensation: Attorney Fees.** The plain meaning of a "reasonable attorney's fee" in Neb. Rev. Stat. § 48-125(4)(a) (Reissue 2021) encompasses the work of a legal assistant for the attorney.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Patrick J. Mack and Madaline McGill, of Hennessy & Roach, P.C., for appellant.

David M. Handley, of Handley Law, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. NATURE OF CASE

The employer contests the waiting-time penalty and attorney fees awarded by the Nebraska Workers' Compensation Court. There was no conflict in the evidence that the employee had suffered a work-related injury. The employer's own medical examiner had found that the employee suffered from a 17-percent permanent impairment because of a work-related injury. Nevertheless, the employer had not paid temporary total disability benefits (TTD) or permanent disability benefits. Nor had it paid for any of the employee's medical care. The employer argues the compensation court lacked authority to award a waiting-time penalty for failing to pay a 17-percent permanent impairment benefit, when the court ultimately found the employee had not yet reached maximum medical improvement (MMI) and awarded TTD. The

compensation court said there was no reasonable controversy that the employee was entitled to some benefit and the employer "cannot have it both ways. It cannot deny the [employee] TTD benefits on the basis that she is at MMI, but fail to pay permanent disability benefits." The employer contests the award of attorney fees on the grounds that the court allegedly relied on a judicial admission the employee had failed to invoke at the hearing, the fees were disproportionate to the total award, and the fees included the services of a paralegal. We affirm.

## II. BACKGROUND

### 1. PETITION

On April 28, 2022, Marlene Mosher brought a petition in the Workers' Compensation Court against her employer, Whole Foods Market, Inc. (Whole Foods), claiming she suffered an injury from a fall on July 4, 2021, arising out of and in the course of her employment. Mosher alleged that, as a result of the accident, she sustained injury to her right lower extremity and right ankle and developed low-back pain. She alleged she had suffered periods of temporary disability, required reasonable and necessary medical care, incurred mileage and expenses, and had not yet reached MMI. Mosher alleged that despite there being no reasonable controversy as to her entitlement to benefits under the Nebraska Workers' Compensation Act, Whole Foods had failed or refused to provide those benefits; thus, she was entitled to waiting-time penalties and attorney fees.

In its answer, Whole Foods admitted that the accident arose out of Mosher's employment with Whole Foods and that her injuries had required reasonable and necessary medical care. Whole Foods admitted it obtained a report from Dr. Peter Cimino in October 2021, stating that Mosher was injured as a result of her accident and was at MMI despite still reporting pain. Whole Foods also admitted that a subsequent magnetic resonance imaging (MRI) showed a tibial stress fracture.

At the same time, Whole Foods denied that the MRI had not yet been performed when Cimino completed his initial report. Whole Foods also denied that Mosher's injuries had not reached MMI, that Mosher was injured performing her duties, that she suffered an "accident" as defined in Neb. Rev. Stat. § 48-151(2) (Reissue 2021), that she sustained an "injury" as defined in § 48-151(4), that her accident occurred in the course of her employment with Whole Foods, that her accident occurred in the scope of her employment with Whole Foods, that the accident caused Mosher's injuries, that the injuries caused periods of temporary disability, that the injuries have or will cause periods of permanent disability and impairment, that Mosher was entitled to a vocational rehabilitation assessment, and that Mosher was entitled to a loss-of-earning capacity assessment.

## 2. Requests for Admissions

In responses to Mosher's requests for admissions, Whole Foods admitted Mosher was employed with Whole Foods on the date of the accident, all the medical treatment sought for the injury was reasonable and necessary, and all the medical bills presented were fair and reasonable. But Whole Foods denied Mosher sustained an accident as defined by § 48-151(2), Mosher sustained an injury as defined by § 48-151(4), the injury was caused by an accident, the accident or injury arose out of her employment at Whole Foods, the accident and injury occurred in the course of her employment, the injury will cause permanent impairment or restrictions, the injury is not likely to improve, the injury has not become stable, Mosher is entitled to a loss-of-earning-capacity assessment, and Mosher is entitled to a vocational rehabilitation assessment.

## 3. Hearing

The hearing before the Workers' Compensation Court was held on May 15, 2023. Despite the denials in Whole Foods' answer and its response to request for admissions, in opening

statements, Whole Foods' counsel said that it "agrees with a lot of what [Mosher's] counsel has said," but certain claimed injuries "prevented us from being able to reach a resolution before this hearing," because of preexisting conditions. Whole Foods' counsel explained that, thus, "we have to try all the issues."

Whole Foods also argued there was a reasonable controversy for denying TTD benefits because Cimino did not give Mosher any restrictions. Mosher offered into evidence Whole Foods' admission, in its response to requests for admissions, that Mosher was employed with Whole Foods on the date of the accident, all of the medical treatment sought for the injury was reasonable and necessary, and all the medical bills presented were fair and reasonable. The admission was admitted into evidence without objection.

By the end of the hearing, the compensation court observed that Whole Foods no longer disputed Mosher's entitlement to some benefits, but instead argued she had reached MMI no later than February 15, 2023, so her award of TTD benefits could not go beyond that date. Mosher claimed entitlement to TTD benefits from December 13, 2021, to February 20, 2022, and again from March 21, 2022, until she reaches MMI. The evidence suggested that Mosher had, at least in the beginning, sometimes worked even though her medical provider had advised her to rest. It was not contested that Mosher was unable to work and did not work during the periods for which she sought TTD benefits.

The most contested issues by the end of the hearing were whether there was a reasonable controversy as to Mosher's entitlement to benefits and medical expenses such that Whole Foods was subject to waiting-time penalties and attorney fees. The evidence was undisputed at the hearing that although Mosher had missed substantial periods of work, Whole Foods had not paid Mosher any indemnity benefits at all. The only payment made to Mosher was $6.50 for mileage to see Cimino for an independent evaluation.

It was also undisputed that Whole Foods had not approved any medical treatment or paid the medical bills submitted by Mosher for treatment of her injuries. Finally, the evidence was undisputed that Whole Foods had refused to accommodate certain work restrictions placed on Mosher by her medical providers.

### (a) Accident

The evidence at the hearing demonstrated that on July 4, 2021, Mosher was working for Whole Foods and fell onto her left side while counting inventory located on a top shelf. The fall resulted initially in symptoms to her left waist, left buttocks, and behind her left knee. At the time, Mosher was 66 years old. She suffered from osteopenia and had a prior right knee replacement in 2015, a prior surgery on her right foot, and a history of gout.

Her symptoms from the injury caused Mosher to begin putting more weight on her right leg and foot when she walked. Mosher continued to go to work but, several days later, was seen by Dr. Shannon Lensing after Mosher woke up to find her right foot swollen. Mosher was treated by Lensing for her injuries from July 2021 until December 2022.

### (b) Pain and Swelling in Right
### Foot, Knee, and Ankle

Lensing observed edema in Mosher's right foot and ankle, with a slightly elevated temperature. Pain on palpitation was severe. Lensing wrote in her assessment that the swelling was secondary and related to Mosher's work injury on July 4, 2021, resulting from "overload[ing]" the foot to compensate for the injuries on her left side. She recommended Mosher not return to work until she was reevaluated the following week.

The following week, Lensing observed effusion in the right ankle and pain on palpitation of the right ankle and joints of the right foot. Mosher was unable to properly bear weight on the right foot. Some swelling was also noted in Mosher's right knee. Lensing discussed with Mosher the possibility of

obtaining an MRI and physical therapy. Mosher was given an injection and told to continue to stay off work.

In Mosher's third visit, Lensing observed swelling in the knee, foot, and ankle and diffuse pain on palpitation. Lensing believed the knee swelling was due to an altered gait and recommended Mosher continue to rest and stay off work. On August 10, 2021, Lensing continued to observe effusion in the right ankle and pain. She recommended Mosher's attempting to work part time using a brace.

(c) Cimino's Evaluation—October 2021

At Whole Foods' request, Mosher was seen by Cimino on October 1, 2021, for an independent medical evaluation. Cimino issued a report concluding that Mosher had suffered a soft tissue injury, a right knee sprain, and a right ankle sprain as a result of the accident on July 4. He opined that all the medical treatment and testing Mosher had undergone up to that point was reasonable and related to the work injury.

Cimino believed Mosher was at MMI and needed no further medical treatment or work restrictions. No MRI had yet been taken of her ankle.

(d) Diagnosis of Stress Fracture

Mosher saw Lensing again on October 12, 2021. Lensing again observed noticeable swelling to the right ankle and pain. She emphasized that Mosher needed to get an MRI of the ankle. She also recommended physical therapy. Lensing stated in her report: "I do believe that all of this pain and aggravation is related to her fall though she does have underlying joint issues but they have been aggravated and cause significant impairment in pain for the patient since then."

An MRI was conducted on November 15, 2021. It revealed a distal tibial stress fracture.

Mosher continued to have significant edema on November 23, 2021, when she again saw Lensing. Mosher was prescribed a soft cast and controlled ankle movement (CAM) boot. Swelling was controlled by compression dressings when

she saw Lensing on December 3, but she still had significant discomfort. Mosher ultimately continued to use the CAM boot, as prescribed, for at least 6 more months.

Lensing stated in her December 3, 2021, report that the tibial stress fracture was secondary to the "consequences and the problems related to the fall" that occurred on July 4. Lensing elaborated that the injuries from the fall caused Mosher to have an abnormal gait, resulting in overuse and the stress fracture. Lensing noted that a stress fracture normally takes a minimum of 6 weeks to heal and that Mosher had comorbidities such as osteoporosis, which could delay bone healing.

Lensing found Mosher was still unable to work and needed to be minimally weight bearing. Lensing took Mosher off work for at least 3 weeks starting on December 10, 2021. Lensing took Mosher off work again on December 21 until her next appointment. On January 11, 2022, Mosher was taken off work for another 2 weeks, at which time, she could return to work for 2 days per week but not on 2 consecutive days.

In February 2022, Mosher saw Dr. Donald Buddecke, one of Lensing's partners. Buddecke observed edema and increased temperature in the right foot. Buddecke stated the signs and symptoms were consistent with "acute gouty arthropathy."

On March 3, 2022, Mosher saw Lensing again. Lensing described that she had suffered a gout flareup but it had calmed down. Improvements to the right lower extremity were noted. Lensing approved Mosher to go back to work but limited her to working only 2 days per week.

On March 22, 2022, Mosher returned to Lensing with symptoms of swelling and pain in her right foot. Lensing applied a soft cast and again took Mosher off work. That no-work restriction continued from March 29 through May 6.

### (e) Development of Neuritis

On March 29, 2022, Mosher reported to Lensing that Mosher was experiencing shooting and tingling pain sensations, and swelling was observed. On April 12, Mosher

reported "pins-and-needles" and "burning and throbbing pain" in the right foot, ankle, and leg. Lensing began to be concerned that the CAM boot prescribed for the stress fracture was irritating the common peroneal nerve. Mosher participated in physical therapy starting on April 26.

On May 17, 2022, Mosher was released by Lensing to work in 2-to-3-hour shifts, two to three times a week, if she was able to sit as necessary. Whole Foods would not accommodate the shortened shift or a different position involving more sitting.

(f) Lensing Report—June 2022

Mosher continued to suffer chronic pain in her right foot. In a report dated June 16, 2022, Lensing described that Mosher had a fall on July 4, 2021, which injured her left hip, causing her to favor the left leg and overload the right, ultimately resulting in a stress fracture in her right tibia. The stress fracture went undiagnosed until November, when an MRI was finally ordered. Lensing opined that prolonged use of a CAM boot as prescribed led to neuritis of the common peroneal nerve and weakness.

Lensing opined that Mosher needed to continue with more physical therapy before she could reach MMI. Lensing also recommended that Mosher see a specialist in "neuro or pain management" and have an electromyography (EMG) nerve conduction study of the right lower extremity to evaluate for the common peroneal nerve neuritis. Lensing continued to recommend work restrictions consisting of shifts no longer than 4 hours, not working 2 days in a row, and being allowed to sit as needed. While Whole Foods provided a pad to stand on and accommodated not working 2 days in a row, it did not accommodate the other restrictions.

(g) Back Pain and Healing
of Stress Fracture

Lensing referred Mosher to Dr. Chris Criscuolo, who examined Mosher on September 8, 2022. In Criscuolo's report, he

noted that Mosher had leg swelling and had developed back pain secondary to the gait abnormality related to the pain in her right foot.

A second MRI was conducted on September 27, 2022. It showed that the stress fracture was healed, but swelling was still present.

(h) October 2022 Report

At the request of her attorney, Mosher was examined on October 14, 2022, by Dr. Sunil Bansal, who reviewed all of Mosher's medical records. Mosher reported numbness and tingling of her right foot, which radiated up her leg. She also reported back pain that increased after 1 hour of walking or 2 hours of standing. She generally could stand comfortably for only 3 hours and had to climb stairs one at a time.

Bansal opined that as a result of the work accident, Mosher suffered a right distal tibial stress fracture of the right ankle, a common peroneal nerve neuropathy of the right foot, sacroiliitis of the low back, and a left hip contusion.

Bansal explained it was logical that the back pain manifested months after the right foot injury, as it was a cumulative process resulting from the altered gait secondary to the right foot pathology. Bansal opined that the back condition and foot pathology were permanent, but recommended continuing treatment that included injections, nerve blocks, and medication.

(i) Cimino's Second Examination—February 2023

Whole Foods had Cimino examine Mosher a second time on February 15, 2023. After his examination of Mosher and review of the MRIs, Cimino opined that, as a result of the work accident on July 4, 2021, Mosher had suffered a right knee sprain, a right ankle sprain, a tibial stress fracture, and postinjury neuritis.

Cimino noted that, during the examination, Mosher reported a "numbing sensation on the dorsum of the ankle and down to the toes" and that she could only tolerate up to 1 hour on

her feet. She was observed to be ambulatory, "but clearly favors the right lower extremity" and is "somewhat ginger with her weightbearing." Nevertheless, Cimino wrote: "[Mosher's] inability to work is based on subjective complaints and not substantiated by the objective clinical exam."

Because "[t]here is not likely to be any significant change in subjective symptoms," Cimino opined that Mosher was at MMI as of February 15, 2023, and suffered a 17-percent permanent impairment to the right leg. Nevertheless, Cimino recommended further medical treatment in the form of an EMG and followup with a neurologist. He explained that he did not believe future medical treatment was likely to lead to any significant changes but the EMG study and evaluation by a neurologist "would be helpful to confirm my suspicions."

### (j) Lensing's Report—May 2023

In a second report on May 9, 2023, Lensing opined Mosher suffered a right tibial stress fracture, peroneal neuritis, and right hip and back problems as a result of the work accident on July 4, 2021. She explained that Mosher had to be in the CAM boot for a prolonged period, because it took months for the stress fracture to heal due to her osteoporosis, rheumatoid arthritis, and advanced age.

Lensing opined that Mosher had reached MMI for the stress fracture on October 18, 2022. However, Lensing did not believe Mosher had reached MMI for her peroneal nerve injury, low-back radiculopathy, right hip pain, and chronic pain of the right leg, citing inadequate treatment for each of these conditions. Lensing noted that lack of adequate treatment was due to a lack of insurance coverage, a denial of Mosher's workers' compensation claim, and her inability to work to have income to pay copayments.

### (k) Mosher's Testimony

Mosher has not returned to work since March 20, 2022. Mosher described that she continues to experience "burning and the needles" sensations in her right foot and limited

mobility. She described her attempts to recover from her injuries as quickly as possible so she could return to work at Whole Foods. At the time of the hearing, Mosher was still doing prescribed daily stretches and exercises. Although she was supposed to return to see Criscuolo, she had not yet done so because of her inability to pay the copayments. Also, she had not yet participated in an EMG study because of financial concerns. She learned the day before the hearing that Whole Foods had authorized the EMG study.

### 4. Award

#### (a) Injuries

The compensation court issued its decision on July 20, 2023. The court found that, as a result of the work accident, Mosher suffered a tibial stress fracture, peroneal neuritis, an ankle sprain, a right knee sprain, an injury to her right hip, and low-back pain in the form of sacroiliitis.

The court noted the experts' agreement on the stress fracture and neuritis, Cimono's opinion as to the ankle and right knee sprains, and Lensing's opinion as to the injury to the right hip. The court observed that the "true dispute between the parties" in relation to the extent of Mosher's injuries was whether she injured her back as a result of the work accident. But the court rejected Whole Foods' argument that Cimino's silence in his report as to whether Mosher suffered a back injury carried more weight than Lensing's and Bansal's reports that she suffered a back injury as a result of the work accident.

#### (b) Not at MMI and Not Able to Work Without Restrictions

The court found that Mosher had not yet reached MMI.

It found Cimino's report placing Mosher at MMI on October 1, 2021, unpersuasive, because Cimino did not have the results of the MRI, which revealed the distal tibial stress fracture.

The court was also unpersuaded by Cimino's report issued after reviewing the MRI, in which Cimino found Mosher had reached MMI as of February 15, 2023. The court observed that the report detailed how Mosher could tolerate being on her feet for only up to 1 hour, complained of a numbing sensation, and favored her right leg. Furthermore, the court noted that Cimino referred Mosher for EMG testing and an examination by a neurologist for future medical treatment.

Indeed, observed the court, every doctor who Mosher had seen recommended additional medical care. The court also found Mosher's testimony as to her ongoing symptoms and limitations, her attempts to get better, and her attempts to work and inability to perform her regular job, to be credible. Finally, it relied on Lensing's opinion that Mosher was not at MMI from any condition besides the tibial fracture. It noted that, under *Rodriguez v. Hirschbach Motor Lines*,[1] a plaintiff is not at MMI until the plaintiff reaches MMI for all the injuries suffered as a result of the work accident. The court found that Mosher was unable to return to work without restrictions.

### (c) TTD

The parties stipulated that Mosher's average weekly wage for TTD is $330.42 and her average weekly wage for permanent disability benefits is $660. The court found that Mosher was entitled to TTD benefits in the amount of $220.28 per week from and including December 13, 2021, to and including January 25, 2022, which is 6 weeks, and starting again and including March 22, 2022, through the date of trial and for so long thereafter as Mosher shall remain temporarily totally disabled. At the time of the court's order, it had been 69 weeks since March 22, 2022.

When Mosher reached MMI, explained the court, she would be entitled to statutory amounts of compensation for any residual permanent disability due to the accident.

---

[1] *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005).

#### (d) Medical Bills and Future Medical Care

The court found that the medical bills and mileage submitted by Mosher were for treatment related to her work injury. It ordered Whole Foods to pay medical bills to the providers in the amounts reflected in a summary found in exhibit 21, which showed a total of $19,913.89 in medical bills, which included $927.68 paid by Mosher, $8,383.95 in adjustments, $2,802.33 paid by Mosher's insurers, and $8,379.57 still owing. It also ordered Whole Foods to pay $197.63 for prescription medications and $293.90 in mileage for medical care.

The court awarded future medical care for the work-related injuries. Based on agreement between all the medical experts' opinions, the court found explicit evidence that future medical treatment was reasonably necessary to relieve Mosher from the effects of the work-related injury.

#### (e) Penalties

The court awarded a waiting time penalty pursuant to Neb. Rev. Stat. § 48-125(3) (Reissue 2021). The court found a reasonable controversy as to Mosher's entitlement to TTD based on Cimino's opinion that she had reached MMI, because a worker is no longer entitled to TTD benefits once MMI has been reached. However, the court noted that Cimino had opined that Mosher suffered a 17-percent permanent impairment as part of his opinion that she had reached MMI; yet, Whole Foods did not pay any benefits, either temporary or permanent. The court stated there was no reasonable controversy excusing Whole Foods' failure to pay Mosher permanent disability benefits.

The court explained that Whole Foods "cannot have it both ways. It cannot deny [Mosher] TTD benefits on the basis that she is at MMI, but fail to pay permanent disability benefits." The court calculated the statutory penalty under § 48-125 based on a 17-percent permanent impairment, resulting in a total penalty benefit of $8,041. Because Mosher has not actually reached MMI, however, the court said Whole Foods "is

not ordered to pay PPD benefit at this time." Rather, "[Whole Foods] only owes the $8,041.00 in penalty benefits. [Whole Foods] shall pay the same to [Mosher]."

### (f) Attorney Fees

The court ordered that, pursuant to § 48-125(4)(a), Whole Foods pay Mosher attorney fees as a penalty for failing to pay medical bills or indemnity benefits within 30 days. In addition to there being no reasonable controversy regarding liability for indemnity benefits, the court also found no reasonable controversy that Whole Foods was liable for Mosher's medical bills. First, the court observed Cimino's report in October 2021 opining that all treatment and testing had been reasonable and related to the alleged work injury. Second, the court observed Whole Foods' admission in its responses to "Requests for Admissions" on July 18, 2022, that the medical treatment Mosher had sought was reasonable and necessary to treat her injuries.

The court found that Mosher was entitled to attorney fees in relation to all the time her attorney spent on the case, which was 66.4 hours. The court reasoned that Whole Foods had failed to pay any indemnity benefits or medical bills prior to the hearing and did not stipulate to an accident and injury arising out of Mosher's employment. Therefore, Mosher's attorney "needed to prove each element of an accident to prevail on [Mosher's] claim for indemnity benefits and payment of her medical bills." However, the court did not find the requested hourly rate of $500 to be reasonable and instead ordered attorney fees in the amount of $250 per hour.

Finally, the court found that the attorney fees should include the work performed by Mosher's attorney's legal assistant at a rate of $75 per hour and for a total of 80 hours, which the court found reasonable. The court explained that if the assistant had not done that work, Mosher's attorney would have had to do it at a much higher billing rate. The total attorney fees awarded was $22,600.

## III. ASSIGNMENTS OF ERROR

Whole Foods assigns, summarized and restated, that the Workers' Compensation Court erred (1) in awarding a waiting-time penalty for nonpayment of a permanent impairment rating by finding no reasonable controversy and failing to explain how a reasonable controversy did not exist, see Workers' Comp. Ct. R. of Proc. 11(A) (2023), and (2) in awarding attorney fees that were primarily focused on a judicial admission that had been waived, were unreasonable based on the facts presented and work performed, and were in excess of the court's powers to the extent they were for fees incurred by a legal assistant.

## IV. STANDARD OF REVIEW

[1] An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[2]

[2] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[3]

[3] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[4]

[4] Whether a reasonable controversy exists is a question of fact.[5] Accordingly, we review for clear error the compensation

[2] See Neb. Rev. Stat. § 48-185 (Reissue 2021). See, also, *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022).

[3] *Spratt v. Crete Carrier Corp., supra* note 2.

[4] *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014).

[5] *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018).

court's findings concerning reasonable controversy underlying its determination of waiting-time penalties.[6] However, if the facts are not in dispute and the inference is clear such that reasonable people could not disagree about the matter, whether a reasonable controversy exists is a question of law.[7]

[5] The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[8]

[6] Determining the amount for attorney fees under § 48-125(4)(a) is necessarily a question of fact that requires a factual determination on several factors.[9]

## V. ANALYSIS

The only issue raised on appeal is the court's award of a waiting-time penalty and attorney fees. Whole Foods argues that there was a reasonable controversy excusing its payment of any indemnity benefits and that the court improperly relied on its admission in finding no reasonable controversy as to its liability for medical bills. Whole Foods also contests that the amount of the attorney fees are unreasonable in relation to the benefits awarded and that they include the fees of a legal assistant.

Compensability under the Nebraska Workers' Compensation Act[10] is determined by § 48-101, which provides:

> When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

---

[6] *Id.*

[7] See *Boring v. Zoetis LLC*, 309 Neb. 270, 959 N.W.2d 795 (2021).

[8] *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019).

[9] *Id.*

[10] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2021).

Under § 48-120, the employer is liable for reasonable medical, surgical, and hospital services. Additionally, a workers' compensation claimant may receive permanent or temporary benefits for either partial or total disability.[11]

[7-9] Under § 48-121(5), temporary disability includes periods while undergoing physical or medical rehabilitation or vocational rehabilitation. Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of MMI, because a disability cannot be both temporary and permanent at the same time.[12] The date of MMI for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident.[13] When an injured employee has reached MMI, any remaining disability is, as a matter of law, "permanent" within the meaning of the Nebraska Workers' Compensation Act.[14]

Section 48-125(1) states that all amounts of "compensation" payable under the Nebraska Workers' Compensation Act "shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death."

Section 48-125(3) provides for a "waiting time" penalty for delinquent compensation payments. "Fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the Nebraska Workers' Compensation Court . . . ."[15]

---

[11] See *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). See, also, §§ 48-121 and 48-125.

[12] *Krause v. Five Star Quality Care, supra* note 11.

[13] *Id*.

[14] *Id*.

[15] § 48-125(3).

[10] Section 48-125(4)(a) provides for "a reasonable attorney's fee" when the employer "refuses payment of compensation or medical payments" and "proceedings are held before the compensation court."[16] "Compensation," in reference to additional sums for waiting time, an attorney fee, and interest, means periodic disability or indemnity benefits payable on account of the employee's work-related injury or death.[17] We have said that § 48-125(1) does not distinguish between whether the disability is temporary or permanent, but refers to "all amounts of compensation payable under the Nebraska Workers' Compensation Act."

[11,12] It has long been established that the "policy of liberal construction of the [Nebraska Workers'] Compensation Act for the benefit of the claimant is . . . the rule in Nebraska."[18] The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purpose of providing compensation to employees injured on the job.[19] We have explained that the purpose of § 48-125 is to encourage prompt payment of workers' compensation benefits by making the delay costly if an award is finally established.[20]

## 1. Reasonable Controversy

### (a) Compensation

Whole Foods argues it should not have to pay any waiting time penalties because there was a reasonable controversy as to whether Mosher had reached MMI and, thus, as to whether its obligations to pay TTD ceased and its obligations to pay

---

[16] *Boring v. Zoetis LLC, supra* note 7.

[17] *Bower v. Eaton Corp., supra* note 5.

[18] *Osteen v. A.C. and S., Inc.*, 209 Neb. 282, 290, 307 N.W.2d 514, 519 (1981).

[19] *Sellers v. Reefer Systems*, 305 Neb. 868, 943 N.W.2d 275 (2020).

[20] See, *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimmina v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005); *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998).

permanent disability began. Whole Foods relatedly argues the compensation court lacked authority to calculate the penalty based on Cimino's report of a permanent impairment, when the court ultimately found that Mosher had not yet reached MMI and awarded TTD instead. Whole Foods does not suggest that Mosher is therefore entitled to a waiting-time penalty for Whole Foods' failure to pay any TTD. Rather, Whole Foods seems to believe that the controversy as to when Mosher reached MMI excused Whole Foods from timely paying any compensation at all.

In awarding the waiting-time penalty, the court reasoned that Whole Foods "cannot have it both ways. It cannot deny [Mosher] TTD benefits on the basis that she is at MMI, but fail to pay permanent disability benefits." We agree.

[13] Although "reasonable controversy" appears nowhere in the text of § 48-125, the phrase has been part of our jurisprudence for more than 90 years, and we have presumed that the Legislature acquiesced in such determination of the Legislature's intent because it has never amended the Nebraska Workers' Compensation Act to address reasonable controversy.[21] Our case law has long held that the waiting-time penalty and attorney fees are available under § 48-125 in cases brought to the Workers' Compensation Court only "where there is no reasonable controversy regarding an employee's claim for workers' compensation."[22]

[14] We have said that a "reasonable controversy" for the purpose of § 48-125 exists (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation

---

[21] See *Bower v. Eaton Corp., supra* note 5.

[22] *Boring v. Zoetis LLC, supra* note 7, 309 Neb. at 278, 959 N.W.2d at 802 (internal quotation marks omitted).

court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.[23] To avoid statutory penalties, an employer need not prevail in the employee's claim, but must demonstrate an actual basis in law or fact for disputing the claim and refraining from payment of compensation.[24]

[15-18] Moreover, although the total amount of compensation due may be in dispute, the employer's insurer nevertheless has a duty to promptly pay that amount which is undisputed.[25] We have said the only legitimate excuse for delay of payment of workers' compensation benefits is the existence of genuine doubt from a medical or legal standpoint that *any* liability exists.[26] The fact that a portion of a disability may be in dispute does not allow an employer to withhold payment of all disability from a workers' compensation claimant, but, rather, the employer must pay, within 30 days of accrual, the payments that are undisputed.[27] Absent a genuine dispute that any liability exists, it is the statutory obligation of the employer and its workers' compensation insurer to begin making weekly payments no later than the expiration of 30 days after notice of disability.[28]

Thus, in *Hale v. Vickers, Inc.*,[29] where the facts at the hearing showed no dispute that there was an impairment, and the only possible dispute was whether the impairment was 30

---

[23] *Id*.

[24] See *Davis v. Crete Carrier Corp.*, 15 Neb. App. 241, 725 N.W.2d 562 (2006). See, also, *Roth v. Sarpy Cty. Highway Dept., supra* note 20; *Grammer v. Endicott Clay Products*, 252 Neb. 315, 562 N.W.2d 332 (1997).

[25] *Boring v. Zoetis LLC, supra* note 7.

[26] *Bower v. Eaton Corp., supra* note 5.

[27] *Hale v. Vickers, Inc.*, 10 Neb. App. 627, 635 N.W.2d 458 (2001).

[28] See *Grammer v. Endicott Clay Products, supra* note 24.

[29] *Hale v. Vickers, Inc., supra* note 27. See, also, *Kubik v. Union Ins. Co.*, 4 Neb. App. 831, 550 N.W.2d 691 (1996).

percent or 37 percent, the Court of Appeals held there was no reasonable controversy that the employer owed the employee compensation for at least a 30-percent impairment.

In *Hall v. Germantown State Bank*,[30] where the evidence was undisputed that the employee suffered some permanent partial disability, but the medical experts disagreed as to the percentage thereof, we construed the testimony of the employer's expert, who opined that there was a 5-percent permanent disability, as a "practical admission" of the same. We then said that the "mere fact that the plaintiff was claiming a greater percentage of disability was no legal justification for the defendants['] withholding the payments admittedly due."[31] As such, "to relieve themselves from the penalty, the defendants should have at least made tender of the amount admittedly due."[32] Because there was a reasonable controversy as to whether the percentage of disability exceeded 5 percent, we held that the employee was entitled to a penalty based on compensation calculated based on a 5-percent impairment rating.

Perhaps most similar to the case at bar, in *Musil v. J.A. Baldwin Mfg. Co.*,[33] the evidence showed a reasonable controversy as to when the employee reached MMI and the extent of the permanent disability, but there was "no reasonable controversy as to the plaintiff's being disabled." Despite this, "instead of paying compensation to the plaintiff for some amount of permanent partial disability, the defendant has paid no compensation to the plaintiff since . . . ."[34] Focusing on

---

[30] *Hall v. Germantown State Bank*, 105 Neb. 709, 712, 181 N.W. 609, 610 (1921).

[31] *Id.*

[32] *Id*.

[33] *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 905, 448 N.W.2d 591, 593 (1989).

[34] *Id.* at 906, 448 N.W.2d at 594.

the language of § 48-125 that the 50-percent waiting-time penalty be "for all delinquent payments," we ordered that the penalty be calculated on all payments that had accrued, and not just the lesser of the controverted amounts.

[19] These cases illustrate that when there is no reasonable controversy that the employee has been injured in a workplace accident and is entitled to some indemnity benefit, the employer is not excused from timely payments thereof. As stated, § 48-125(1) does not distinguish between whether the disability is temporary or permanent but refers to "all amounts of compensation payable under the Nebraska Workers' Compensation Act." It would be contrary to our precedent, the language of § 48-125, and the beneficent purposes of the Nebraska Workers' Compensation Act for an employer, with impunity, to fail to timely pay any indemnity benefits when there is no reasonable controversy as to the employee's entitlement to indemnity benefits and the only reasonable dispute is whether or when the employee reached MMI such that the benefits should be for a permanent partial disability rather than for TTD.

The evidence at the hearing showed no reasonable controversy that Mosher suffered an ankle sprain, knee sprain, hip injury, tibial stress fracture, peroneal neuritis, and back pain as a result of an accident arising out of and in the course of her employment with Whole Foods. Whole Foods was well aware by the time of Cimino's second report that there was no dispute that Mosher suffered some form of disability as a result of a work accident and had incurred reasonable medical expenses related to her injury. Despite this, as of the date of the court's order, the only payment Whole Foods made to Mosher was $6.50—for mileage to see Cimino.

The court did not clearly err in finding there was no reasonable controversy that compensation was due, which justified a waiting-time penalty. As to the basis upon which the waiting-time penalty was calculated, imposing a penalty

based on the employer's own expert's opinion is supported by our opinion in *Hall*.[35]

Whole Foods also argues the court erred in awarding a waiting-time penalty because it is an issue of first impression whether a court can award a waiting-time penalty based on the employer's expert's opinion of MMI, when the compensation court ultimately finds the employee has not yet reached MMI. We disagree.

First, Whole Foods' narrow characterization of the legal issue presented ignores the precedent discussed above.

Second, we have explained that there is a reasonable controversy when there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act. This refers to the underlying claim and whether there was no reasonable controversy as to entitlement to compensation and medical payments. As already set forth, § 48-125(4) provides for "a reasonable attorney's fee" when the employer "refuses payment of compensation or medical payments." And "'[c]ompensation'" in reference to additional sums for waiting time, attorney fees, and interest, means periodic disability or indemnity benefits payable on account of the employee's work-related injury or death.[36]

[20] "[C]ompensation," as set forth in § 48-125(4), does not mean the waiting-time penalty and attorney fees the employee is entitled to for the failure to timely pay compensation and medical bills. As opposed to an unanswered question of whether the employee was entitled to *any* compensation or medical payments, a question unanswered by the Supreme Court as to whether waiting-time penalties are properly imposed or calculated under the facts presented does not prevent the imposition of waiting-time penalties. To hold

---

[35] See *Hall v. Germantown State Bank, supra* note 30.

[36] *Bower v. Eaton Corp., supra* note 5, 301 Neb. at 339, 918 N.W.2d at 271.

differently would not only be circular, but contrary to both the plain language of § 48-125(4) and the beneficent purposes of the Nebraska Workers' Compensation Act to encourage prompt payment of workers' compensation benefits by making delays costly if an award is finally established.

The compensation court did not clearly err in finding that there was no reasonable controversy as to the compensability of Mosher's injuries. Nor did it err in using Whole Foods' expert's opinion as the basis for its calculation of the waiting-time penalty.

There is no merit to Whole Foods' assignment of error that the court's reasoning was so confusing that it violated Workers' Comp. Ct. R. of Proc. 11(A). The court's reasoning was sound when it said Whole Foods could not escape its obligation to pay some indemnity benefit simply because of a dispute over when and if Mosher had reached MMI, because it "cannot have it both ways."

### (b) Medical Expenses

As to whether there was a reasonable controversy pertaining to the submitted medical expenses, Whole Foods argues that the compensation court erred by relying on its judicial admission that all medical treatment was reasonable and related to the work accident. Whole Foods asserts Mosher waived this admission by not "invok[ing]" it at the hearing.[37]

Notably, Whole Foods does not argue in its brief on appeal that the evidence at the hearing demonstrated a reasonable controversy as to the amount or liability for Mosher's medical expenses. And the record is clear that there was no reasonable controversy concerning medical expenses. Whole Foods does not explain how the court's allegedly erroneous reliance on Whole Foods' admission rendered it reversible error for the court to impose penalties for failing to timely pay Mosher's medical expenses that the evidence was undisputed Whole Foods owed.

---

[37] Brief for appellant at 21.

Regardless, Mosher did not waive the admission. The facts here presented are distinct from those presented in *Boring v. Zoetis LLC*,[38] wherein we held that the employer's admission had been waived. In *Boring*, the employer admitted in its answer to the petition that the employee sustained a work accident and the injuries he sought compensation for arose out of and in the course of his employment. However, the parties thereafter entered into a stipulation that acknowledged that whether there was a compensable injury was still at issue.

Furthermore, in *Boring*, the employer's position at the hearing was that while the employee may have suffered a minor strain in a workplace accident, the injury for which he sought recovery was not the result of a workplace accident, and both parties recognized there was an issue to be tried regarding whether there was a compensable accident and injury. Finally, the evidence presented at the hearing reflected "widely differing views about causation and the extent" of the employee's injury and the compensation court had to conduct "extensive weighing of the evidence . . . to find a compensable injury."[39] Despite this, the compensation court awarded penalties and attorney fees, reasoning solely that because of the judicial admission in the employer's answer, there was no reasonable controversy that the employee sought recovery for a compensable injury.

We held in *Boring* that the court's reliance on the judicial admission was misplaced because the parties' stipulation, the comments of the parties, and the evidence all indicated the admission had been superseded at trial and that the question of compensability of the injury was tried by consent. Furthermore, we held as a matter of law that, under the facts presented, a reasonable fact finder could reach only the conclusion that a reasonable controversy existed. Thus, we held it was clear error for the court to find no reasonable controversy.

---

[38] *Boring v. Zoetis LLC, supra* note 7.

[39] *Id.* at 273, 959 N.W.2d at 799.

While Whole Foods points to a statement it made before the hearing that the court would need to decide medical bills, the presentation of the evidence at trial did not indicate a reasonable controversy as to whether the medical bills were work-related injuries or whether their amount was reasonable or accurate. Furthermore, unlike in *Boring*, where the admission was in the employer's answer and no further action thereon was undertaken, here, the admission was in the response to requests for admissions and Mosher offered that admission into evidence at the hearing. Whole Foods did not object, and the admission was entered into evidence for purposes of the hearing.

Finally, the compensation court did not rely solely on the judicial admission. It also cited to the evidence that supported its conclusion, which, again, clearly supported the conclusion that there was no reasonable controversy as to medical expenses. The court did not err in finding there was no reasonable controversy as to medical expenses.

## 2. Reasonableness of Amount of Attorney Fees

[21] Whole Foods alternatively argues that the amount of the attorney fees was excessive. A determination of an award of attorney fees under § 48-125 must be calculated on a case-by-case basis.[40] The determination of the amount of attorney fees to be awarded under § 48-125(4)(a) is necessarily a question of fact that requires a factual determination on several factors, including the value of legal services rendered by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and

---

[40] *Fentress v. Westin, Inc., supra* note 8.

standing of the attorney, and the customary charges of the bar for similar services.[41]

According to Whole Foods, the amount of the attorney fees is unreasonable because it is approximately 60 percent of Mosher's present recovery under the award. However, in *Bower v. Eaton Corp.*,[42] for example, we affirmed an award of attorney fees well in excess of the amount of the award. Likewise, in *Starks v. Cornhusker Packing Co.*,[43] we held the employee was entitled to attorney fees even though the increase in the award obtained in pursuing an application for review was "trivial at best." In *Simmons v. Precast Haulers*,[44] we held that, even though the primary reason for filing the petition was the employer's failure to pay medical expenses and there was no controversy regarding the compensability of the injuries, the compensation court did not err in awarding the full amount of attorney fees, which was $36,555, instead of limiting attorney fees to those attributable to the collection of the unpaid medical bills.

[22,23] The amount involved in the claim is but one factor, and the amount of the attorney fees is not necessarily limited to legal work performed in recovering a specific, unpaid medical bill or delinquent compensation.[45] And we give "great deference"[46] to the compensation court's determination of reasonable attorney fees pursuant to § 48-125, which determination will not be disturbed on appeal unless it is clearly wrong in light of the evidence.[47]

---

[41] *Bower v. Eaton Corp., supra* note 5.

[42] *Id*.

[43] *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 39, 573 N.W.2d 757, 764 (1998).

[44] *Simmons v. Precast Haulers, supra* note 4.

[45] *Bower v. Eaton Corp., supra* note 5.

[46] *Simmons v. Precast Haulers, supra* note 4, 288 Neb. at 496, 849 N.W.2d at 131.

[47] See *Bower v. Eaton Corp., supra* note 5.

As the Workers' Compensation Court noted in awarding the full number of hours spent pursuing Mosher's claim, Mosher had to pursue both unpaid indemnity benefits and unpaid medical expenses, and there was no reasonable controversy that she was entitled to both. Furthermore, because Whole Foods did not stipulate to an accident and injury arising out of Mosher's employment, Mosher's attorney "needed to prove each element of an accident to prevail on [Mosher's] claim for indemnity benefits and payment of her medical bills."

[24] As stated in the concurring opinion in *Harmon v. Irby Constr. Co.*,[48] where one of the underlying reasons for filing the workers' compensation claim is to establish compensability for a delinquent medical bill, the claimant must prove all elements of compensability to successfully obtain an award on the medical payments. A court should not hesitate to assess an entire attorney fee in such cases, because "[n]onpayment of medical bills can have an extremely deleterious result for an injured worker," including delaying necessary medical care, which can result in a more severe permanent injury.[49]

The compensation court did not clearly err in awarding attorney fees based on all the hours spent pursuing Mosher's claim.

### 3. Fees for Legal Assistant

Lastly, Whole Foods argues that the award of attorney fees should not have included the work of the attorney's legal assistant. Whole Foods argues that the plain meaning of the phrase "attorney's fee" is that it is solely work done by the attorney personally. Section 48-125(4)(a) states simply that "a reasonable attorney's fee shall be allowed." "[A]ttorney's fee" is not defined by the Nebraska Workers' Compensation Act.

---

[48] *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999) (Gerrard, J., concurring).

[49] *Id.* at 431, 604 N.W.2d at 822 (Gerrard, J., concurring).

In *Missouri v. Jenkins*,[50] the U.S. Supreme Court explained that reasonable attorney fees must include not only the work of the attorneys personally but the work of others, such as paralegals, whose labor contributes to the work product for which an attorney bills the client. Although the Court was addressing a different law, its wording was similar to § 48-125 in that it simply referred to a "reasonable attorney's fee."[51] The Court said that this term "cannot have been meant to compensate only work performed personally by members of the bar."[52] Furthermore, "encouraging the use of lower cost paralegals rather than attorneys wherever possible . . . encourages cost effective delivery of legal services."[53]

This same understanding of reasonable attorney fees was applied in *Schroff, Inc. v. Taylor-Peterson*[54] to a state workers' compensation law allowing for a "reasonable attorney's fee." The court stated that while attorney fees are a matter of discretion, "paralegal fees should not be categorically eliminated from the calculus of attorney's fees since reasonable out-of-pocket expenditures, beyond normal overhead, are routinely included in the counsel fee award."[55] A similar result has been reached in other states with similarly worded workers' compensation statutes.[56]

[25] As the compensation court observed, if the legal assistant had not done that work, Mosher's attorney would have done it at a much higher billing rate. As noted by the

---

[50] *Missouri v. Jenkins*, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

[51] *Id*., 491 U.S. at 285 (internal quotation marks omitted).

[52] *Id*.

[53] *Id*., 491 U.S. at 288 (internal quotation marks omitted).

[54] *Schroff, Inc. v. Taylor-Peterson*, 732 A.2d 719, 721 (R.I. 1999).

[55] *Id*.

[56] See, e.g., *Vitac Corp. v. W.C.A.B. (Ronzac)*, 578 Pa. 574, 854 A.2d 481 (2004); *Schefke v. Reliable Collection Agency, Ltd.*, 96 Haw. 408, 32 P.3d 52 (2001); *Kinsey v. World PAC*, 152 Conn. App. 116, 98 A.3d 66 (2014).

U.S. Supreme Court, including legal assistants' work under the definition of "attorney fees" encourages the cost-effective delivery of legal services.[57] Furthermore, it is fundamentally part of the supervising attorney's work product. It is customary that an attorney will bill the client for legal services that include the work of nonattorney legal staff. We hold that the plain meaning of a "reasonable attorney's fee" in § 48-125(4)(a) encompasses the work of a legal assistant for the attorney. The compensation court did not clearly err in including the work of Mosher's attorney's legal assistant in its calculation of a "reasonable attorney's fee."

## VI. CONCLUSION

For the foregoing reasons, we affirm the award of the Workers' Compensation Court.

AFFIRMED.

---

[57] See *Missouri v. Jenkins, supra* note 50.